Luis G. CABRERA, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 64, 1999.

Supreme Court of Delaware.

Submitted: Dec. 7, 1999.
Decided: March 6, 2000.

Anthony A. Figliola, Jr., Figliola & Facciolo, Wilmington, Joseph A. Gabay, Wilmington, for Appellant.

Kim Ayvazian, Department of Justice, Georgetown, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, HARTNETT and BERGER, Justices, constituting the Court en Banc.

PER CURIAM:

In this appeal, we consider the adequacy of jury instructions about the reliability of accomplice testimony. Under settled Delaware law, trial courts have wide latitude in framing jury instructions, and their choice of wording will not be disturbed as long as the instruction correctly states the law and is not so confusing or inaccurate as to undermine the jury's ability to reach a verdict. The Superior Court did not use the pattern jury instruction or the language suggested by either attorney, but it gave an instruction that was informative and not misleading. Accordingly, we affirm.

## I.  Factual and Procedural Background

On January 5, 1995, a burned body was discovered in a dumpster in Willingboro, New Jersey.  Two years later it was established that the victim was Fundador Otero, an acquaintance of Luis Cabrera's father.  Cabrera was charged with two counts of murder first degree and one count each of burglary first degree and conspiracy.  Cabrera did not testify at trial, but his codefendant, Luis Reyes, described the crime, in detail, under a plea agreement with the State.

Reyes testified that, the day before the killing, Cabrera told Reyes that his father "had a problem" with Otero and that Cabrera was going to kill Otero.  Cabrera solicited Reyes' help and Reyes somewhat reluctantly agreed.  The next night, the two men drove to Otero's house.  Cabrera kicked down the front door and started accusing Otero of talking to the police and "doing [Cabrera's] father wrong."  Cabrera then told Reyes to hold Otero and, while Otero was immobilized, Cabrera held a plastic bag over Otero's head until he suffocated.  Cabrera and Reyes then put Otero's body in his pickup truck and drove to New Jersey.  They abandoned the truck, threw Otero into a dumpster, and set fire to the body.

Near the end of trial, the court conferred with counsel about jury instructions.  The court did not accept either side's proposed language on the instruction concerning accomplice testimony.  Instead, the court gave a modified version of its own instruction.  The jury found Cabrera guilty on all charges and, after a penalty hearing, the trial court sentenced him to life in prison.

1.  Del.Supr., 263 A.2d 286 (1970).

2.  *Miller v. State,* Del.Supr., 224 A.2d 592 (1966).

3.  *Baker v. Reid,* Del.Supr., 57 A.2d 103, 109 (1947).

## II.  Discussion

Cabrera's sole argument on appeal is that the trial court erred by giving a jury instruction on accomplice testimony that did not match the language approved by this Court in *Bland v. State*[1] and incorporated in the pattern jury instructions.  Instead of instructing the jury that the testimony of an accomplice should be examined "with suspicion and great caution," the trial court advised the jury that the testimony should be examined "with caution."  Cabrera does not contend that this choice of wording was confusing or that it misstated the law.  Accordingly, under well settled standards governing jury instructions, Cabrera's appeal fails.

A jury instruction must give a correct statement of the substance of the law[2], and it must be "reasonably informative and not misleading, judged by common practices...."[3]  Even where there are some inaccuracies in an instruction, this Court will reverse only if the deficiency undermined the jury's ability "to intelligently perform its duty in returning a verdict."[4]  Neither the *Bland* decision nor the distribution of pattern jury instructions changed these basic principles.

In *Bland,* this Court considered whether there was sufficient evidence to support a conviction when that evidence was the conflicting testimony of alleged accomplices.  After deciding that the evidence was insufficient, the Court commented on the jury instruction that the trial court gave on accomplice testimony.  The Court explained why that instruction was not entirely clear, and suggested "that a charge on this point somewhat along the following lines might be appropriate."[5]  The instruction suggested in *Bland* originated the warning that accomplice testimony

4.  *Storey v. Castner,* Del.Supr., 314 A.2d 187, 194 (1973).

5.  263 A.2d at 289.

should be examined "with suspicion and great caution."

◼ Four years after *Bland,* a committee appointed by Chief Justice Wolcott was asked to draft suggested jury instructions for use with the newly enacted Delaware Criminal Code. The Committee, chaired by Justice Walsh, compiled a set of pattern jury instructions that have been, and continue to be, very helpful guides for practitioners and trial court judges. They represent the collective wisdom of two experienced judges and eight practitioners from a cross section of the legal community. The pattern instructions, which include the *Bland* instruction, are a most valuable resource and should be consulted in the first instance when the trial court is conducting a prayer conference and selecting the wording of its instructions.

◼ The pattern instructions are not dispositive, however, and do not alter the settled standards by which we measure the adequacy of jury instructions. The Introduction to the pattern instructions acknowledges that the instructions are not a restatement of the law and that they will require modification as the law evolves. Users are cautioned:

> These instructions are intended as guidelines and should be used in cases where they are applicable. Experience may prove that these instructions should be modified or supplemented depending upon the issues of fact and law presented at the trial.

This Court, recognizing that the pattern instructions are not mandatory, has upheld instructions against claims that the instructions were deficient because they varied the language in a pattern instruction.[6] The analysis focused not on whether any special words were used, but whether the instruction correctly stated the law and enabled the jury to perform its duty.

6. *Bell v. State,* 1993 WL 169143, 625 A.2d 278 (Del.Supr.); *Bishop v. State,* 1991 WL 78470,

Turning to the language at issue, we find that the instruction is adequate. The trial court did not use the phrase "suspicion and great caution," but it did warn the jurors that accomplice testimony may be suspect because of the accomplice's self-interest and his plea agreement. In addition, the trial court told the jury that the testimony should be examined "with caution." Considering the instruction as a whole, we are satisfied that it sufficiently communicated the credibility concerns associated with accomplice testimony.

### III. Conclusion

Based on the foregoing, the decision of the Superior Court is AFFIRMED.