IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARK PURNELL, | § | |
| | § | No. 339, 2013 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware, in and for |
| STATE OF DELAWARE, | § | New Castle County |
| | § | |
| Plaintiff Below, | § | Cr. I.D. No. 0701018040 |
| Appellee. | § | |

Submitted: September 24, 2014
Decided: November 21, 2014

Before **STRINE**, Chief Justice, **RIDGELY** and **VALIHURA**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**

Thomas A. Foley, Esquire, (*argued*), Joseph M. Bernstein, Esquire, Wilmington, Delaware, for Appellant.

Elizabeth R. McFarlan, Esquire (*argued*), Karen V. Sullivan, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

**VALIHURA**, Justice:

Defendant-Below, Appellant Mark Purnell ("Purnell") appeals from a Superior Court Order denying his Rule 61 motion for postconviction relief following his conviction of the following offenses:  murder second degree; attempted robbery first degree; possession of a firearm during commission of a felony; possession of a deadly weapon during commission of a felony; possession of a deadly weapon by a person prohibited; and conspiracy second degree.

On October 17, 2008, Purnell was sentenced to an aggregate of 77 years at L-5, 21 years of which were mandatory, suspended after serving 45 years at decreasing levels of supervision.  Purnell's convictions and sentences were affirmed by this Court on direct appeal.[1]

A timely motion for post-conviction relief ("Rule 61 motion")[2] was filed on March 25, 2010.  An amended Rule 61 motion was filed on October 11, 2011.  The Superior Court referred the matter to a Commissioner for findings and a recommendation.  On July 3, 2012, the Commissioner recommended that the Rule 61 motion be denied.[3]  Purnell filed a timely appeal from the Commissioner's findings and recommendations.  On May 31, 2013, the Superior Court issued its decision denying Purnell's Rule 61 motion.[4]

---

[1] *See Purnell v. State*, 979 A.2d 1102 (Del. 2009) [hereinafter *Purnell I*].

[2] Super. Ct. Crim. R. 61.

[3] *See State v. Purnell*, 2012 WL 2832990 (Del. Super. Jul. 3, 2012) [hereinafter *Purnell II*].

[4] *State v. Purnell*, 2013 WL 4017401 (Del. Super. May 31, 2013) [hereinafter *Purnell III*].

On June 28, 2013, Purnell filed a timely appeal in this Court from the Superior Court's Rule 61 decision. Purnell raises four arguments on appeal, all related to the performance of his trial counsel. First, Purnell argues that his trial attorney was ineffective under *Strickland v. Washington*[5] when he failed to request an accomplice credibility jury instruction. Second, Purnell contends that his counsel was ineffective when he failed to request a limiting instruction regarding the guilty plea entered into by his co-defendant, Ronald Harris ("Harris"), where the plea was entered following selection of the jury for a joint trial, but before the trial began. Third, Purnell contends that his counsel was ineffective when he failed to appeal the trial court's ruling denying his request to empanel a new jury following disclosure of Harris' guilty plea. Finally, Purnell argues that his trial counsel was ineffective when he failed to object to comments made by the prosecutor, which Purnell contends amounted to improper "vouching" for Harris' credibility.

We find no merit to Purnell's appeal. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY[6]

Tameka Giles ("Mrs. Giles") was murdered after a botched robbery attempt on January 30, 2006. She was walking with her husband when two men

---

[5] 466 U.S. 668 (1984).

[6] These facts are drawn from the Commissioner's findings and recommendation, which were in turn adopted by the Superior Court.

approached them and demanded money. After she refused, one of them fatally shot her in the back. Both men fled.

The police quickly identified Harris as a suspect based on eyewitness identification from Angela Rayne, who had been smoking crack cocaine nearby at the time of the shooting. Mrs. Giles' husband also tentatively identified Kellee Mitchell ("Mitchell") as one of the shooters in a photo lineup. The police arrested both men on February 18, 2006. At the time of the arrest, Purnell was in Harris' apartment, but was not yet considered a suspect. Neither Harris nor Mitchell identified Purnell as one of the assailants during any of their respective interviews with the police in 2006.

Purnell was not identified as a suspect until January 2007, when Corey Hammond ("Hammond") informed the police that he had seen Purnell and Harris together on the day of the shooting. Hammond had previously denied knowing anything about the crime, but suddenly recalled that Purnell had complained about needing money and was carrying a firearm on the morning of January 30, 2006. Hammond also informed police that Purnell had later bragged about killing Mrs. Giles. As with most of the State's witnesses, Hammond's credibility was an issue: his statement to police followed an arrest on drug-related charges, and the State agreed to reduce his sentence in exchange for his trial testimony.

4

Also in January 2007, Mitchell changed his story and informed the police that Purnell was involved in the shooting.  He recalled a conversation in April 2006 with Purnell in which Purnell confessed to shooting Mrs. Giles.  Mitchell's girlfriend, Etienne Williams ("Williams"), also claimed that she had overheard Purnell confess during a telephone call.

Based on this evidence, the police arrested Purnell.  In April 2007, Purnell and Harris were jointly indicted on charges of murder in the first degree, attempted robbery in the first degree, conspiracy in the second degree, possession of a firearm during the commission of a felony, and possession of a deadly weapon by a person prohibited.  A jury was selected for the trial on April 2, 2008.  Five days later, before the trial began, Harris accepted a plea deal from the State.  In exchange for pleading guilty to reduced charges, Harris agreed to testify against Purnell.  The trial against Purnell began on April 14, 2008, with the same jury initially selected for the joint trial.

The jury voted to convict Purnell of murder in the second degree, attempted robbery in the first degree, possession of a firearm during the commission of a felony, possession of a deadly weapon during the commission of a felony, possession of a deadly weapon by a person prohibited, and conspiracy in the second degree.  Purnell was sentenced by the Superior Court to an aggregate of 77 years at Level 5 incarceration, 21 years mandatory, suspended after serving 45

5

years at decreasing levels of supervision. Both the conviction and sentence were affirmed by this Court on direct appeal on August 25, 2010.[7]

Purnell then filed a motion for postconviction relief under Rule 61, alleging ineffective assistance of counsel. The Superior Court referred Purnell's motion to a Commissioner for findings and a recommendation. On July 3, 2012, the Commissioner issued her recommendation that the motion be denied,[8] which Purnell appealed, seeking *de novo* review by a judge of the Superior Court. After hearing oral arguments, the Superior Court issued its ruling denying Purnell's motion on May 31, 2013.[9] Purnell now appeals that decision to this Court.

## II. DISCUSSION

As we recently stated in *Hoskins v. State*,[10] "'[w]e review a Superior Court judge's denial of a Rule 61 motion for postconviction relief for abuse of discretion.'"[11] Constitutional questions and other questions of law are reviewed *de novo*.[12]

---

[7] *Purnell I*, 979 A.2d 1102.

[8] *Purnell II*, 2012 WL 2832990.

[9] *Purnell III*, 2013 WL 4017401.

[10] 2014 WL 4722716 (Del. Sept. 22, 2014) [hereinafter *Hoskins II*]. This decision affirmed the denial of postconviction relief in *Hoskins v. State*, 14 A.3d 554, 556-59 (Del. 2011) [hereinafter *Hoskins I*], *overruled by Brooks v. State*, 40 A.3d 346 (Del. 2012).

[11] *Id*. at *2 (quoting *Neal v. State*, 80 A.3d 935, 941 (Del. 2013)).

[12] *Hoskins II*, 2014 WL 4722716, at *2 (citing *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013)).

Purnell's claims all allege instances of ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. An ineffective assistance of counsel claim requires a defendant to satisfy the two-pronged test set out in *Strickland v. Washington*.[13] First, the defendant must show that counsel's performance was deficient, "meaning that 'counsel's representation fell below an objective standard of reasonableness.'"[14] "If counsel is shown to be deficient, then the defendant must demonstrate prejudice from counsel's error."[15]

In analyzing the first prong of *Strickland*, a defendant bears a heavy burden in demonstrating that trial counsel's representation fell below an objective standard of reasonableness. As we said in *Hoskins*, "[i]n order to eliminate 'the distorting effects of hindsight,' there is a strong presumption that trial counsel's representation was professionally reasonable."[16] "If an attorney makes a strategic choice after thorough investigation of law and facts relevant to plausible options,' that decision is virtually unchallengeable . . . ."[17]

*Strickland's* second prong requires the defendant to demonstrate how trial counsel's error resulted in prejudice. We have defined "prejudice" as "a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[13] 466 U.S. 668 (1984).

[14] *Hoskins II*, 2014 WL 4722716, at *3 (citing *Cooke v. State*, 977 A.2d 803, 848 (Del. 2009)).

[15] *Hoskins II*, 2014 WL 4722716, at *3 (citing *Strickland*, 466 U.S. at 687).

[16] *Hoskins II*, 2014 WL 4722716, at *3 (citing *Gattis v. State*, 697 A.2d 1174, 1178 (Del. 1997)).

[17] *Hoskins II*, 2014 WL 4722716, at *3.

proceeding would have been different."[18]  Mere allegations of ineffectiveness are

not sufficient.  Instead, a defendant must allege actual prejudice and substantiate it.

A "'failure to state with particularity the nature of the prejudice experienced is fatal

to a claim of ineffective assistance of counsel.'"[19]  "In particular, a court need not

determine whether counsel's performance was deficient before examining the

prejudice suffered by the defendant as a result of the alleged deficiencies."[20]

>    A.    *Trial Counsel's Failure to Request an Accomplice Credibility Instruction*
>
>    1. *The Failure Constituted Deficient Performance Under Strickland's First Prong*

Purnell's first claim on appeal is that his trial counsel was deficient for

failing to request a jury instruction concerning the credibility of accomplice

testimony -- a so-called *Bland* instruction.[21]  In our recent decision in *Hoskins II*,

we trace the somewhat tortured history of the law regarding accomplice credibility

instructions.[22]  The law as it presently exists requires a trial court to provide a

specific *Bland* instruction any time an accomplice witness testifies.[23]  This model

---

[18] *Id.* (citing *Strickland*, 466 U.S. at 687).

[19] *Hoskins II*, 2014 WL 4722716, at *3 (citing *Dawson v. State*, 673 A.3d 1186, 1196 (Del. 1996)).

[20] *Strickland*, 466 U.S. at 697.

[21] *See Bland v. State*, 263 A.2d 286, 289-90 (Del. 1970).

[22] *See Hoskins II*, 2014 WL 4722716, at *3-5.

[23] *Id*. at *4 (citing *Brooks v. State*, 40 A.3d 346, 350 (Del. 2012)).

8

instruction, originally set forth in 1970 in *Bland*,[24] and modified in *Brooks*,[25]

provides:

> A portion of the evidence presented by the State is the testimony of admitted participants in the crime with which these defendants are charged. For obvious reasons, the testimony of an alleged accomplice should be examined by you with more care and caution than the testimony of a witness who did not participate in the crime charged. This rule becomes particularly important when there is nothing in the evidence, direct or circumstantial, to corroborate the alleged accomplices' accusation that these defendants participated in the crime. Without such corroboration, you should not find the defendants guilty unless, after careful examination of the alleged accomplices' testimony, you are satisfied beyond a reasonable doubt that it is true and you may safely rely upon it. Of course, if you are so satisfied, you would be justified in relying upon it, despite the lack of corroboration, and in finding the defendants guilty.[26]

### a. The Present State of the Law

In *Brooks*, this Court issued important guidance as to how cases calling for a

*Bland* instruction should be handled by the trial court.[27] Seeking to "resolve this

unnecessarily convoluted area of the law,"[28] we announced a new rule that requires

a trial court to provide a specific *Bland* instruction any time an accomplice witness

---

[24] *Bland*, 263 A.2d at 289-90.

[25] *Brooks*, 40 A.3d at 350 (modifying the original model instruction set forth in *Bland*).

[26] *Id.*

[27] *See id.* at 349-50.

[28] *Id.* at 350.

testifies -- regardless of whether or not it is requested by trial counsel.[29] This Court unequivocally told trial courts to "give the modified *Bland* instruction [as stated in *Brooks*] or commit plain error."[30] However, we explained that this new rule would not be retroactive and there would be no plain error where a trial judge provides an instruction that "correctly applied the law as it existed on the day [the trial judge] instructed the jury."[31] Accordingly, for cases decided before our 2012 decision in *Brooks*, "our analysis on postconviction review of a *Bland* claim is governed by the case law controlling at the time of trial."[32]

Purnell's trial began on April 14, 2008.[33] Thus, we must ascertain the state of the law as of April 14, 2008.

### b. The Law at the Time of Purnell's Trial

Following *Bland*, and up to the start of Purnell's trial on April 14, 2008, we held on multiple occasions that accomplice testimony instructions that departed from the specific wording in *Bland* were acceptable so long as they were accurate and adequately explained the potential problems with accomplice testimony.[34] For

---

[29] *Id*. at 348.

[30] *Id.*

[31] *Id*. at 351.

[32] *Hoskins II*, 2014 WL 4722716, at *4.

[33] App. to Appellant's Opening Br. at A7-8.

[34] *Cabrera v. State*, 747 A.2d 543 (Del. 2000), *overruled by Brooks*, 40 A.3d 346. *See also Soliman v. State*, 2007 WL 63359 (Del. Jan. 10, 2007), *overruled by Brooks*, 40 A.3d 346; *Bordley v. State*, 2003 WL 22227558 (Del. Sept. 24, 2003), *overruled by Brooks*, 40 A.3d 346.

example, in *Cabrera v. State*, this Court held that a modified *Bland* instruction was adequate where it "warn[ed] the jurors that accomplice testimony may be suspect because of the accomplice's self-interest and his plea agreement."[35]  Three years later, in *Bordley v. State*, we held that there was no error where the pattern jury instruction warned that the accomplice testimony "may be affected by self-interest, by an agreement she may have with the State, by her own interest in the outcome, and by prejudice against the defendant."[36]  Four years later, in *Soliman v. State*, we reiterated that when the jury is provided with a correct statement of the law, even if it does not instruct the jury to examine the testimony "with caution," we will not find error.[37]

### c.  Cases After Purnell's April 2014 Trial:  Smith, Hoskins II, and Brooks

To complete the chronology, in cases after Purnell's trial, we again considered whether counsel's failure to request a *Bland* instruction could successfully establish an ineffective assistance of counsel claim.  In *Smith v. State*, a case of first impression, this Court reiterated, "a general credibility instruction is not an acceptable substitute for a specific accomplice credibility instruction."[38]  This Court determined that "the failure of [a defendant's] trial counsel to request a

---

[35] *Cabrera*, 747 A.2d at 545.

[36] *Bordley*, 2003 WL 2222 7558, at *2.

[37] *Soliman*, 2007 WL 63359, at *3.

[38] *Smith v. State*, 991 A.2d 1169, 1179 (Del. 2010), *overruled by Brooks*, 40 A.3d 346.

11

specific instruction on the credibility of accomplice testimony amounted to 'deficient attorney performance' under the first part of [this Court's] *Strickland* analysis."[39] However, *Smith* still required the defendant to establish prejudice under the second prong of *Strickland*. We explained in *Smith* that "trial counsel's failure to request [a *Bland*] instruction will not always be prejudicial *per se*."[40] Rather, "the prejudicial effect depends upon the facts and circumstances of each particular case."[41] Nonetheless, we found that the defendant in *Smith* did receive ineffective representation when trial counsel failed to request an accomplice instruction based on the facts of that case.[42]

In *Hoskins I*,[43] this Court considered whether it was plain error when a judge failed *sua sponte* to give an accomplice credibility instruction. We held that *Smith* did not create such a broad rule. We explained that the *Smith* decision required a trial judge "to give a *Bland*-type of instruction, *upon request*, when accomplice testimony is presented."[44] Thus, it was not plain error for a trial judge to fail to give *sua sponte* an accomplice credibility instruction.

---

[39] *Id.* at 1177; *see also Brooks*, 40 A.3d at 354 ("Counsel who forgets to request an instruction that could help his client fails to meet an objective standard of reasonableness.").

[40] *Smith*, 991 A.2d at 1180.

[41] *Id.*

[42] *Id.*

[43] *Hoskins I*, 14 A.3d 554, 556-59 (Del. 2011), *overruled by Brooks*, 40 A.3d 346.

[44] *Hoskins I*, 14 A.3d at 562 (emphasis in original).

12

The progeny of cases after *Bland*, up to and including *Hoskins I*, were

overruled when we decided *Brooks*. In *Brooks*, we held that trial judges must give

an accomplice testimony instruction any time an alleged accomplice testifies

regardless of whether trial counsel requests it.[45]

But at the time of Purnell's trial, his counsel did not have the benefit of this

Court's decision in *Brooks*. This Court's holding in *Brooks* is not applicable to our

determination of whether the failure to request the *Bland* instruction was erroneous

or prejudicial to Purnell.[46] Instead, the earlier holdings in *Cabrera*, *Bordley*, and

*Soliman* provide the applicable framework for analysis.

In *Bordley*, we stated that "[a]lthough the trial judge in the present case did

not instruct the jury to examine [the accomplice's] testimony 'with caution,' the

trial judge should be granted wide latitude in framing his jury instruction."[47] In

Purnell's trial, the jury was given a general credibility instruction as follows:

> You are the sole judges of credibility of each person who has
> testified and of the weight to be given to the testimony of each.
> You are to judge the credibility of all the witnesses that have
> testified before you whether for the prosecution or for the
> defense . . . .
>
> In considering the credibility of witnesses and in considering
> any conflict in testimony, you should take into consideration

---

[45] *See Brooks*, 40 A.3d at 350.

[46] *See Guy v. State*, 82 A.3d 710, 714 (Del. 2013) ("[T]he mandatory instruction set forth in *Brooks* does not apply retroactively.").

[47] *Bordley*, 2003 WL 22227558, at *2.

13

each witness' means of knowledge, strength of memory and opportunity for observation, the reasonableness or unreasonableness of the testimony, the consistency or inconsistency of the testimony, *the motives influencing the witness*, the fact, if it is a fact, that the testimony has been contradicted, *the witnesses [sic] bias or prejudice or interest in the outcome of the litigation*, the ability to have acquired the knowledge of the facts to which the witness testified, the manner and demeanor upon the witness stand, and *that apparent truthfulness of the testimony, and all other facts and circumstances shown by the evidence which affect the credibility of the testimony.*[48]

The jury was further instructed as follows:

*The fact that a witness has been convicted of a felony or a crime involving dishonesty, if such be a fact, may be considered by you for one purpose only, namely, in judging the credibility of that witness.* The fact of such a conviction does not necessarily destroy or impair the witness' credibility and it does not raise the suggestion that the witness testified falsely.[49]

The Superior Court found that the instructions were "correct statement[s] of the substance of the law, [were] reasonably informative and not misleading."[50] However, *Cabrera*, *Bordley* and *Soliman* all contained specific instructions regarding the accomplice's agreement with the State. In *Cabrera*, the jury instruction "did warn the jurors that accomplice testimony may be suspect because of the accomplice's self-interest and his plea agreement."[51] In *Bordley*, the

---

[48] *Purnell III*, 2013 WL 4017401, at *7.

[49] *Id.* at *8.

[50] *Id.*

[51] *Cabrera v. State*, 747 A.2d 543, 545 (Del. 2000), *overruled by Brooks*, 40 A.3d 346.

14

instruction "did, in fact, warn that the testimony of . . . the accomplice[] may be affected by self-interest, by an agreement she may have with the State, by her own interest in the outcome, and by prejudice against the defendant."[52]  In *Soliman*, the jury was instructed that it:

> may consider all the factors which affect the witness' credibility, including whether the testimony of the accomplice has been affected by self-interest, by an agreement which he may have with the State, by his own interest in the outcome of the litigation, by prejudice against the defendant, or whether or not the testimony has been corroborated by any other evidence in the case.[53]

Thus, in these cases -- where we did not find reversible error in the jury instructions -- language directing the jury to take into account accomplice testimony was used in addition to a general witness credibility instruction.  In Purnell's trial, the trial court only gave the general witness credibility instruction.  Thus, although a general credibility instruction was given, the jury was not instructed as to the specific concerns regarding accomplice testimony.

What *Cabrera*, *Bordley* and *Soliman* make clear is that Purnell's counsel was on notice that a separate jury instruction regarding accomplice testimony could be requested.  Accordingly, we must determine whether counsel's decision not to

---

[52] *Bordley v. State*, 2003 WL 22227558, at *2 (Del. Sept. 24, 2003), *overruled by Brooks*, 40 A.3d 346.

[53] *Soliman v. State*, 2007 WL 63359, at *3 n.20 (Del. Jan. 10, 2007), *overruled by Brooks*, 40 A.3d 346.

15

request the separate instruction was a strategic one.  In *Neal v. State*, we observed

that "[t]hough we do not require lawyers to predict the future, [*Smith* and *Brooks*]

only underscore the concerns that this Court has long recognized:  a decision not to

request a *Bland* instruction is not a product of trial strategy."[54]  We further noted in

*Neal*:

> even though this Court, at the time of Neal's trial [in August of
> 2009], displayed some ambivalence about the exact wording of
> a *Bland* instruction, "it was well established that, in Delaware, a
> defendant is entitled, upon request, to a specific jury instruction
> concerning the credibility of accomplice testimony in cases
> where the State's evidence includes the testimony of an
> accomplice."[55]

In this case, Purnell's trial counsel stated in an affidavit, "[c]andidly, I

cannot recall why I did not request the instruction."[56]  Yet, requesting an

instruction would have been consistent with trial counsel's strategy.  Purnell's

counsel wanted to convince the jury that Harris was credible when he initially told

police that Purnell was not involved, but then lied at trial as a result of his plea deal

---

[54] *Neal v. State*, 80 A.3d 935, 944 (Del. 2013); *see also Brooks*, 40 A.3d at 354 ("When considering whether to request an instruction on accomplice testimony, the defense gains nothing by failing to request a cautionary instruction, aside perhaps from a later chance at a claim for ineffective assistance of counsel."); *Smith*, 991 A.2d at 1177 ("[T]here is no reasonable trial strategy for failing to request the cautionary accomplice testimony instruction. . . .  We cannot envision an advantage which could be gained by withholding a request for th[ese] instruction[s].").

[55] *Neal*, 80 A.3d at 944 (quoting *Smith*, 991 A.2d at 1175) (applying *Smith* and *Brooks* to a trial conducted prior to those decisions); *but see Torrence v. State*, 2012 WL 2106219 (Del. Jun. 11, 2012) (finding that where the language of the instruction differed from *Brooks*' modification of *Bland*, this Court will not find error).

[56] App. to Appellant's Opening Br. at A24.

16

with the State. Throughout the trial, Purnell's counsel highlighted Harris' motives in testifying and contrasted these with his motives upon first being questioned by the police.[57] Although this Court only required accomplice testimony instructions to be accurate and adequately explain the potential problems with accomplice testimony and there was no precise language required to be used in the instruction,[58] the instruction would nevertheless have furthered the defense strategy. An accomplice testimony instruction would have helped illustrate the point defense counsel attempted to make during cross-examination and closing arguments: accomplice testimony must be scrutinized for potential bias and unreliability. We thus conclude that trial counsel's performance in failing to request a *Bland* instruction "fell below an objective standard of reasonable attorney conduct" and constitutes deficient performance under the first prong of *Strickland*.

---

[57] App. to Appellee's Answering Br. at B26. *See Purnell III*, 2013 WL 4017401, at *9 (in its review of Purnell's Rule 61 motion, the Superior Court stated that "[t]he fact that the defense counsel's strategy did not prove to be successful does not diminish the reasonableness of that strategy"). In concluding that the first prong of the *Strickland* standard had not been met, the Superior Court concluded that although defense counsel could not recall why he did not request a *Bland* instruction, the strategy was clear from the record -- namely, defense counsel did not want to discredit Harris' testimony in its entirety. Instead, we believe the instruction would have furthered the strategy of convincing the jury that Harris later lied at trial -- contrary to his earlier statements to the police -- as a result of his plea agreement.

[58] *Soliman*, 2007 WL 63359, at *3 (denying an appeal where both parties conceded that the accomplice testimony instruction was an accurate statement of law); *Bordley*, 2003 WL 22227558, at *2 ("The record demonstrates that the pattern jury instruction used by the trial judge was a correct statement of the law and adequately guided the jury as trier of fact and determiner of credibility."); *Cabrera*, 747 A.2d at 545 ("Turning to the language at issue, we find that the instruction is adequate. . . . Considering the instruction as a whole, we are satisfied that it sufficiently communicated the credibility concerns associated with accomplice testimony.").

17

### 2. *The Failure Was Not Prejudicial Under Strickland's Second Prong*

Although trial counsel's failure to request a *Bland* instruction was deficient, Purnell must now demonstrate prejudice under the second prong of *Strickland*. To show prejudice, Purnell must demonstrate a reasonable probability that, but for counsel's deficient performance, the jury would have decided differently.[59]

Purnell asks us to reexamine the validity of the prejudice standard articulated in *Brooks*. He claims that *Brooks* fails to recognize the fundamental differences between the "reasonable probability" inquiry under *Strickland* and the traditional "harmless error" analysis. He argues that our interpretation of the second prong of *Strickland* makes it more difficult for a defendant to establish prejudice than what the Supreme Court intended.[60]

The harmless error standard is different from the standard we articulated in *Brooks*. Harmless error is a burden-shifting test. In *Chapman v. California*,[61] the United States Supreme Court noted:

> Certainly error, constitutional error, in illegally admitting
> highly prejudicial evidence or comments, casts on someone

---

[59] *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003) (citing *Strickland*, 466 U.S. at 687; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996)).

[60] Appellant's Opening Br. at 16-17 ("In holding that a defendant is not prejudiced if: (1) the testimony of the accomplice is corroborated by independent evidence; and (2) the defendant fails to show a reasonable probability that the outcome would have been different, the Court has re-defined *Strickland's* prejudice inquiry by making it more difficult to establish prejudice than is required under *Strickland* and its progeny.").

[61] 386 U.S. 18 (1967).

other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment.[62]

The Supreme Court has further explained that the analytical framework of the harmless error doctrine is "not whether the legally admitted evidence was sufficient . . . but rather, whether the State has proved beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[63]

Our standard in *Brooks* comports with the standard set forth by *Strickland* and its progeny. In *Strickland*, the Supreme Court noted that "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."[64] The defendant has the burden to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[65] Similarly, in *Brooks* we held that the burden is on the defendant to "demonstrate a reasonable probability that the jury would have decided differently had it heard the *Bland* instruction."[66]

---

[62] *Id.* at 24.

[63] *Satterwhite v. Texas*, 486 U.S. 249, 258-59 (1988) (internal quotation marks omitted).

[64] *Strickland*, 466 U.S. at 693.

[65] *Id.* at 694.

[66] *Brooks*, 40 A.3d at 354-55.

Here, we apply the standard for prejudice as it existed at the time of Purnell's trial. *Strickland* requires us to "consider the totality of the evidence"[67] in determining whether the defendant has shown that, but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. "A reasonably probability is a probability sufficient to undermine confidence in the outcome."[68] It is therefore "not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."[69]

The Superior Court considered the totality of the evidence to find that even if Purnell had established deficient performance under the first prong of *Strickland*, Purnell failed to establish prejudice as required under the second prong.[70] It concluded that there was "significant, additional information before the jury that substantiated the accomplice's testimony."[71] We agree.

Evidence, aside from Harris' testimony, showed that Purnell was identified as the shooter by three other individuals, none of whom were accomplices -- Hammond, Mitchell and Williams. Hammond testified at trial that he heard

---

[67] *Strickland*, 466 U.S. at 695. *See also Smith*, 991 A.2d at 1180 ("The prejudicial effect depends upon the facts and circumstances of each particular case.").

[68] *Strickland*, 466 U.S. at 694.

[69] *Id.* at 693.

[70] *Purnell III*, 2013 WL 4017401, at *9.

[71] *Id.* at *8.

20

Purnell complain that he was "broke" and saw Purnell carrying a semi-automatic gun in his waistband on the day of the shooting.[72] He also testified that Purnell had later bragged that he had "popped" Mrs. Giles because she refused to hand over her money.[73]

Most of Mitchell's testimony came into evidence through a Section 3507[74] statement because he claimed he could not remember anything on the witness stand. The State introduced evidence that Mitchell was unwilling to cooperate at trial because Purnell had threatened him for being a "snitch." In the statements provided by the police detectives who had previously interviewed him, Mitchell claimed Purnell had confessed to him in April 2006 to killing Mrs. Giles because she recognized him when he tried to rob her.[75] Williams, Mitchell's girlfriend, testified at trial that she overheard a telephone conversation between Purnell and her cousin, Jerome Portis, in which Purnell confessed to killing Mrs. Giles, although she believed he might have been joking.[76]

---

[72] App. to Appellant's Opening Br. at A40.

[73] *Id.* at A42.

[74] Under 11 *Del. C.* § 3507, the voluntary out-of-court statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value in a criminal prosecution.

[75] App. to Appellant's Opening Br. at A36. Harris testified that he ran away when Purnell pulled out a gun. *Id.* at A50.

[76] After claiming that he had killed Mrs. Giles, Purnell said "sike," which Williams interpreted as indicating that his preceding statement was potentially false or in jest. App. to Appellant's Opening Br. at A45-46. Aqueshia Williams was also present for the conversation, and testified to a similar account. App. to Appellant's Reply Br. at AR1-2.

The State also introduced the recording of a telephone call between Purnell and Tramont Mitchell, Kellee Mitchell's brother, in which Purnell bragged that he had "a lot" to do with the murder.[77] A video statement from Aqueshia Williams, Etienne Williams' sister, was played for the jury, in which she claimed that Purnell said "I shot one bitch, I'll kill another."[78]

Moreover, Purnell asserted that he did not associate with Harris, the accomplice, but that claim was undermined by the fact that he was found in Harris' home when Harris was arrested.[79] Purnell also lacked a credible alibi, as he presented two conflicting reports of where he was on the night of the shooting.

Further, as discussed above, the jury was instructed that it had the "sole" responsibility for judging the "credibility of each person who has testified and of the weight to be given to the testimony of each." The jury was instructed to consider the witness' motives, bias, prejudice, interest and general credibility. Additionally, Purnell's counsel cross-examined Harris about his plea, focusing on the inconsistencies between Harris' testimony and his previous statements to the police.[80] He then used his closing argument to reiterate that theme, as to Harris

---

[77] App. to Appellee's Answering Br. at B14.

[78] *Id.* at B5-6.

[79] Purnell did not testify at trial, but his attorney in his closing argument asserted that the jury could not "make a connection between [Purnell] and Ron Harris." App. to Appellant's Opening Br. at A54.

[80] App. to Appellee's Answering Br. at B10-11.

and the other witnesses: "you have been instructed to . . . try to make one harmonious story of the events on January 30th 2006. That is going to be a hard job based upon all those conflicting statements and *all the motivation that people have to get out of jail, get out of trouble*."[81]

*Strickland* requires the defendant to show that there is a reasonable probability that the result would have been different had his attorney not erred. Given the independent evidence corroborating Harris' testimony, Purnell's counsel's vigorous efforts to undermine Harris' credibility at trial, and the jury instruction's general caution regarding "the motives influencing the witness" and the witness's "bias or prejudice or interest in the outcome of the litigation," we do not find that there is a reasonable probability that the jury's verdict would have changed had it heard the *Bland* instruction. Thus, Purnell has not met his burden to show prejudice as required by the second prong under *Strickland*.

> B.   *Trial Counsel's Failure to Request a Limiting Instruction Regarding the Guilty Plea of Co-defendant Harris Did Not Constitute Ineffective Assistance of Counsel*

Purnell argues that his counsel should have requested the jury be instructed about the effects of Harris' guilty plea based on the fact that they knew Harris was a co-defendant and would learn he had pled guilty. The jurors saw Harris sitting at the defense table during jury selection, but at the start of trial, Harris was absent.

---

[81] *Id.* at B26 (emphasis added).

23

During the State's opening statement, the jury learned that Harris had pled guilty and would testify for the State.

Purnell relies on this Court's decision in *Allen v. State*[82] to show that a reasonably competent defense attorney would request a cautionary instruction concerning Harris' guilty plea. The State argues, and the Superior Court found, that the facts in *Allen* "significantly differ" from the facts in this case.[83] We agree.

In *Allen*, we considered whether admitting into evidence a certified copy of a co-defendant's guilty plea agreement without live testimony was an abuse of discretion.[84] Allen and two co-defendants were indicted on twenty charges arising from three separate burglary incidents. Both co-defendants entered into plea agreements with the State prior to the trial. One of the co-defendants testified during Allen's trial, but the other did not. The Superior Court allowed into evidence, over defense counsel's objection, the non-testifying co-defendant's plea agreement. We held that "a co-defendant's plea agreement may not be used as substantive evidence of a defendant's guilt, to bolster the testimony of a co-defendant, or to directly or indirectly vouch for the veracity of another co-defendant who pled guilty and then testified against his or her fellow accused."[85]

---

[82] 878 A.2d 447 (Del. 2005).

[83] *Purnell III*, 2013 WL 4017401, at *10.

[84] *Allen*, 878 A.2d at 449.

[85] *Id.* at 450.

24

We did acknowledge, however, that there are limited circumstances in which a prosecutor may seek to introduce a co-defendant's guilty plea. For example, "[d]uring the direct examination of a co-defendant, a prosecutor may elicit testimony regarding that co-defendant's plea agreement and may actually introduce that agreement into evidence."[86]

The admission of the guilty plea in such a circumstance may serve "the limited purpose of allowing the jury to accurately assess the credibility of the co-defendant witness, to address the jury's possible concern of selective prosecution or to explain how the co-defendant witness has first-hand knowledge of the events about which he or she is testifying."[87] We made clear that even "[i]n these situations, a trial court *must still* give a proper cautionary instruction as to the limited use of the plea agreement and the accompanying testimony about it."[88] We warned that admitting a guilty plea, even for a limited purpose, must be accompanied by a cautionary instruction, because the "absence of such a limiting instruction is an important factor in determining whether the admission of the guilty plea was harmless error."[89]

---

[86] *Id.* at 450-51. We also noted that testimony about a guilty plea may also be elicited during cross-examination for the purposes of impeachment. *Id.* at 451.

[87] *Id.* at 451.

[88] *Id.* (emphasis added).

[89] *Id.*

The trial court in *Allen* instructed the jury that there may be "many reasons" why a defendant may plead guilty.[90] However, the trial court never instructed the jury on the proper limited purpose for admitting the actual plea agreement into evidence.[91] This Court reasoned that without an instruction on how the jury should evaluate the evidence, it left open the possibility that the jury "use[d] the plea agreement as substantive evidence of Allen's guilt, to bolster the testimony of co-defendant Howard or to directly or indirectly vouch for the veracity of co-defendant Howard who pled guilty and testified against Allen at trial."[92]

In this case, Harris' plea agreement was not offered into evidence. Further, Harris testified and was subject to rigorous cross-examination. Thus, *Allen* does not provide valid grounds for Purnell to argue that his counsel needed to request a cautionary instruction regarding Harris having pled guilty. Accordingly, Purnell has not demonstrated that his counsel's conduct fell below an objective standard of reasonableness and was deficient under the first prong of *Strickland*.[93]

---

[90] *Id.* at 449-50.

[91] *Id.* at 451.

[92] *Id.*

[93] Harris' decision to plead guilty was a central element of Purnell's defense strategy at trial. Defense counsel used the fact that Harris accepted a plea agreement to make the argument that Harris was trying to protect his own interests by shifting responsibility for Mrs. Giles' murder from himself to Purnell. An instruction admonishing the jury not to use the plea as substantive evidence of Purnell's guilt may have furthered defense counsel's strategy. However, as discussed above, not requesting such an instruction is not deficient performance under the first prong of *Strickland*. Therefore, we do not reach the second prong under *Strickland*, *i.e.*, whether

C. *Trial Counsel's Failure to Appeal the Trial Court's Ruling Denying his Request to Empanel a New Jury Did Not Constitute Ineffective Assistance of Counsel*

Purnell argues that his counsel's failure to appeal the trial court's rejection of his request to empanel a new jury was evidence of deficient performance under *Strickland*. During jury selection, jurors saw Harris at the defense table and understood him to be Purnell's co-defendant. Purnell contends that the jury was likely to infer his guilt based on Harris' guilty plea. Indeed, his trial counsel did request a new jury on April 8, 2008, the day after Harris entered his plea. However, after the trial court denied the request for a new jury, Purnell's counsel did not appeal the ruling. Nor did he include the issue when he appealed the conviction and sentence on other grounds. Purnell's counsel stated in his affidavit that he did not appeal the ruling related to seating a new jury because he "did not believe that this issue would have been successful on direct appeal because the jury swore and [*sic*] oath to be fair and impartial."[94] He also stated in his affidavit that he "was able to cross-examine Harris concerning the beneficial plea he received to testify in an effort to attack the credibility of his proffer and trial testimony."[95]

---

there is a reasonable probability that a different outcome would result if the jury had been given such an instruction.

[94] App. to Appellant's Opening Br. at A25.

[95] *Id.*

Our analysis of a claim of ineffective assistance of appellate counsel follows the standard *Strickland* framework. In *Neal v. State*, we noted that:

> Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Nevertheless, "[i]t is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."[96]

In this case, Purnell has not demonstrated that his counsel was incompetent for failing to raise this claim on appeal. Defense counsel made a strategic decision not to pursue the claim, which is sufficient under the *Strickland* test. "A strategy, which structures appellate arguments on 'those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'"[97]

In *Jones v. Barnes*, the United States Supreme Court held that although a defendant has the final authority to make certain fundamental decisions, such as whether to plead guilty, or to take an appeal, the defendant does *not* have a constitutional right to compel his counsel to raise issues that counsel, in exercising his own independent and professional strategic judgment, decides not to present.[98]

---

[96] *Neal v. State*, 80 A.3d 935, 946 (Del. 2013) (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

[97] *Zebroski v. State*, 822 A.2d 1038, 1051 (Del. 2003) (quoting *Flamer v. State*, 585 A.2d 736, 758 (Del. 1990)).

[98] *Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("It is also recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to

This Court applied *Jones* in *Scott v. State*, a case raising a similar issue to the one presented here.[99] In *Scott*, defendant's counsel stated in his affidavit that he "did not argue [an] issue [on appeal] because [he] did not believe that there was any chance that [this Court] would reverse based on the circumstances of the ruling."[100] Moreover, Scott's trial counsel did, in fact, cross-examine the witness on the underlying issue that he did not appeal. This Court held that Scott's claim for ineffective assistance of counsel was thus without merit.[101]

In this case, defense counsel stated that his reason for not raising this argument on appeal was because it was unlikely to be successful. Purnell's current counsel does not cite to any rule of law or precedent that says that a new jury must be empanelled whenever a jury is aware that a case has been brought against two criminal defendants, and one of them pleads guilty before trial. Jurors are presumed to follow the instructions given them. The jury swore under oath to be fair and impartial. Counsel used the information concerning Harris' plea as part of the defense strategy. Purnell's counsel sought to do what Scott's counsel did: cross-examine on the issue. Purnell's trial strategy was to show Harris as

---

plead guilty, waive a jury, testify in his or her own behalf, or take an appeal…[but no] decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.").

[99] *Scott v. State*, 7 A.3d 471, 479 (Del. 2010).

[100] *Id.*

[101] *Id.*

opportunistic because he was afraid of going to trial and the State offered him a plea agreement. The fact that the jury saw Harris during selection only furthered Purnell's argument. Thus, we find that the trial court did not err in rejecting this claim.

        *D.*     *Trial Counsel's Failure to Object to Certain Comments by the Prosecutor Did Not Constitute Ineffective Assistance of Counsel*

Finally, Purnell argues that his trial counsel was deficient under *Strickland* for failing to object to the prosecutor's alleged "vouching" for Harris. Purnell alleges that the prosecutor improperly vouched for Harris by asking Harris whether he was "telling the truth" in his statements to police and in his trial testimony, but had lied during earlier statements.[102] The trial counsel stated in his affidavit that he did not object because he "did not consider the prosecutors [*sic*] statements to be vouching for the witness because [trial counsel] had raise[d] the truthfulness of his statements during the cross-examination of Harris."[103]

  We reject Purnell's contention that the prosecutor's statements amounted to improper vouching such that his attorney was deficient for failing to object. "Improper vouching occurs when the prosecutor implies some personal superior knowledge, beyond that logically inferred from the evidence at trial, that the

---

[102] App. to Appellant's Opening Br. at A51-53.

[103] *Id.* at A26.

30

witness has testified truthfully."[104]  It is proper for prosecutors to first establish a

foundation, which can include a discussion of a witness's truthfulness.[105]  Here, the

prosecutor asked Harris if he had told the truth in his first two conversations with

the police.[106]  Then he asked Harris about his plea deal:

> Q:  Now, Mr. Harris, before you signed this plea agreement, did you go over it with your attorney?
>
> A:  Yes.
>
> Q:  And the agreement states:  "The defendant agrees to cooperate with the prosecution of his co-defendant by testifying *truthfully* during the co-defendant's trial, if called as a witness by either party."  Is that correct?
>
> A:  Yes.
>
> Q:  And that was read to you by your attorney?
>
> A:  Yes.[107]

On appeal, Purnell essentially concedes that the prosecutor's statements did

not in fact constitute vouching under current law, but argues that his trial counsel

---

[104] *Miller v. State*, 750 A.2d 530 (Del. 2000).

[105] *See Ray v. State*, 587 A.2d 439, 443 (Del. 1991) ("[A] witness' statement may be introduced [under 11 *Del. C.* § 3507] only if the two-part foundation is first established:  the witness testifies about both the events and whether or not they are true.  Finally, in order to conform to the Sixth Amendment's guarantee of an accused's right to confront witnesses against him, the victim must also be subject to cross-examination on the content of the statement as well as its truthfulness.").

[106] App. to Appellant's Opening Br. at A51 ("Q: And were you telling [Detective Tabor] the truth when you told him all those things on February 18th?"); A52 ("Q: And on January 24th of 2007, all those things that I just talked to you about, were you -- was that the truth that you told Detective Tabor?").

[107] *Id.* at A53 (emphasis added).

"could have persuasively argued" that our standards for improper vouching "should be re-examined." Here, there is no deficient performance under *Strickland* because there was no improper vouching by the prosecution, and it is not deficient performance to not object under these circumstances where the prosecutor's conduct comports with existing law. Accordingly, we reject Purnell's claim.

### III. CONCLUSION

Based upon the forgoing, we conclude that the Superior Court did not abuse its discretion in denying Purnell's motion for postconviction relief. Accordingly, the judgment of the Superior Court is AFFIRMED.