IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ZAIRE WALLER, | § | |
| | § | No. 283, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2212012405 |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: February 26, 2025
Decided: April 14, 2025

Before **TRAYNOR**, **LEGROW** and **GRIFFITHS**, Justices.

## **ORDER**

On this 14th day of April 2025, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    A jury convicted Appellant Zaire Waller of disregarding a police officer's signal and two counts of disregarding a red light.  On appeal, Waller contends that the trial judge's jury instruction concerning the offense of disregarding a police officer's signal was legally incorrect and confusing. More particularly, Waller contends that the court erred by using the word "willful" and failing to provide a dictionary definition for that term.  For the reasons explained below, we affirm the Superior Court's judgment.

(2)     On the evening of December 29, 2022, Trooper Amadou Barry of the Delaware State Police, in a marked vehicle, patrolled the area of Harmony Road and Route 4 in New Castle County, Delaware.[1]  After observing a gold Toyota Camry failing to maintain its lane of travel, Trooper Barry closed in behind the vehicle.[2] Once there, Trooper Barry noticed that the Toyota's windows were tinted, so he ran a search on his computer to see if there was a tint waiver on file.[3]  When he did not find one, he activated his emergency lights to signal to the Toyota to pull over.[4]  The driver of the Toyota activated a right turn signal.[5]  This led Trooper Barry to believe that the driver would comply and pull over.[6]  Instead, the Toyota swerved to the left and increased its speed.[7]  Trooper Barry immediately activated his patrol car's sirens and gave chase.[8]

---

[1] App. to Opening Br. at A75–76.

[2] *Id*. at A76.

[3] *Id*.; *see* 21 *Del C.* § 4313(a) ("No person shall operate any motor vehicle on any public highway, road or street with the front windshield, the side windows to the immediate right and left of the driver and/or side wings forward of and to the left and right of the driver that do not meet the requirements of Federal Motor Vehicle Safety Standard 205 in effect at the time of its manufacture."); *see* 21 *Del. C.* § 4313(d) (providing an exception for those in possession of "a statement signed by a licensed practitioner of medicine and surgery or osteopathic medicine or optometry verifying that tinted windows are medically necessary for the owner or usual operator").

[4] App. to Opening Br. at A76.

[5] *Id*.

[6] *Id*.

[7] *Id*. at A77.

[8] *Id*.

(3)     The chase continued through several intersections.[9]  First, the Toyota drove through a red light at the intersection of Churchmans Road and Delaware Park.[10]  It then increased its speed through the intersection of Old Churchmans Road and Route 4.[11]  Next, it veered hard to the right and struck a traffic sign at the intersection of Routes 4 and 7.[12]  After striking the sign, the Toyota drove through another red light, narrowly missing another vehicle.[13]  The Toyota veered hard again, this time, to the left.[14]  The Toyota then came to an abrupt stop next to a pole.[15]  Two of the vehicle's occupants immediately fled on foot.[16]  The driver, who was later identified as Waller, did not attempt to flee.[17]  Trooper Barry ordered Waller to the ground, and Waller immediately complied.[18]  After securing the area, Trooper Barry placed Waller under arrest.[19]

---

[9] *See* Answering Br., Ex. 1.

[10] App. to Opening Br. at A77.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*; *see* Answering Br., Ex. 1.

[16] *See* Answering Br., Ex. 1.

[17] *Id.*

[18] App. to Opening Br. at A78; *see* Answering Br., Ex. 1.

[19] App. to Opening Br. at A85–86, A90; *see* Answering Br., Ex. 1.

(4)     A grand jury indicted Waller on three counts:  one count of disregarding a police officer's signal in violation of 21 *Del. C.* § 4103(b) (Count One); and two counts of disregarding a red light in violation of 21 *Del. C.* § 4108(a)(3) (Counts Two and Three).

(5)     A week before trial, the trial judge sent the parties proposed jury instructions, which prompted an objection from Waller.  Waller argued that the instruction as to Count One—disregarding a police officer's signal—was insufficient because the instruction as to that offense did not specify a mental state.  Waller contended that the lack of a stated *mens rea* in the statute required the court to apply a default standard of "intentionally, recklessly or knowingly" under 11 *Del. C.* § 251(b).[20]  The State contended that the statutory language implied a *mens rea* element of knowledge and that the instructions were appropriate as proposed.  The trial judge asked for supplemental responses to address this Court's decision in *Edwards v. State*, which construed 21 *Del. C.* § 4103(b) (disregarding a police officer's signal).[21]  The State responded that no default *mens rea* applied under 11 *Del. C.* § 251(b), and that the proposed instruction was sufficient.  Waller responded

---

[20] 11 *Del. C.* § 251(b) (providing that "when the state of mind sufficient to establish an element of an offense is not prescribed by law, that element is established if a person acts intentionally, knowingly, or recklessly").

[21] 285 A.2d 805 (Del. 1971).

that even if 11 *Del. C.* § 251(b) did not apply, *Edwards* required the instruction to state that he acted intentionally.

(6)    The Superior Court issued its ruling shortly before jury selection.  It found that 21 *Del. C.* § 4103(b) did not expressly specify a mental state for purposes of conviction.  The court then adopted the language of *Edwards*, finding that the statute implied a *mens rea* of "willfulness."[22]  Thus, 11 *Del. C.* § 251(b) did not apply, and the State was required to show that Waller "willfully operated the vehicle in disregard" of the police officer's signal.[23]  The trial judge further advised that the jury would be instructed to interpret any undefined terms, such as "willful," according to their commonly accepted meaning.[24]

(7)    After the close of the evidence, the court instructed the jury consistent with its ruling on the *mens rea* element.[25]  During deliberations, the jury sent a note

---

[22] App. to Opening Br. at A39.

[23] *Id.*

[24] *Id.* at A39, A149.

[25] The instructions as to Count One were: "in order to find the Defendant guilty of Disregarding a Police Officer's Signal as alleged in Count I of the indictment, you must find that all of the following elements have been established beyond a reasonable doubt:

  (1) The Defendant was driving a motor vehicle on a public street or highway of this State; and
  (2) The Defendant received a visual or audible signal from a police officer to bring his vehicle to a stop; and
  (3) The police officer was identifiable by uniform, by motor vehicle or by a clearly discernible police signal; and
  (4) The Defendant operated the vehicle in *willful* disregard of the signal."

*Id.* at A128, A152–53 (emphasis added).

to the trial judge asking "how do we interpret willful disregard while operating a motor vehicle" in connection with Count One, element four?[26] Waller asked the trial judge to provide the jury with a dictionary definition. The trial judge denied Waller's request and held to its earlier ruling—to interpret undefined words according to their commonly accepted meaning. The jury returned guilty verdicts on all counts. The Superior Court sentenced Waller to two years of Level V incarceration suspended immediately for one year of Level III probation. Waller now appeals.

(8)   The parties disagree about the applicable standard of review.[27] Ordinarily, this Court reviews a lower court's denial of a proposed jury instruction under an abuse of discretion standard.[28] If the lower court refused to instruct on a defense theory, *de novo* review applies.[29] Here, the trial court granted Waller's request for the instruction to provide a *mens rea* element. The trial judge's ruling

---

[26] *Id.* at A167.

[27]   Waller argues that the proper standard of review is *de novo* because the Superior Court denied his request for a jury instruction and the instruction provided to the jury "incorrectly stated the law." Opening Br. at 13. The State disagrees, contending that although a *de novo* standard applies to a refusal to instruct on a defense theory, a refusal to give a "particular" instruction is subject to an abuse of discretion. Answering Br. at 5 (citing *Hankins v. State*, 976 A.2d 839, 840 (Del. 2009)).

[28] *Hankins*, 976 A.2d at 840; *see also Wright v. State*, 953 A.2d 144, 148 (Del. 2008) (citing *U.S. v. Pitt*, 193 F.3d 751, 755–56 (3d Cir. 1999) ("In determining whether the district court abused its discretion, this Court evaluates whether the proffered instruction was legally correct, whether or not it was substantially covered by other instructions, and whether its omission prejudiced the defendant.")).

[29] *Wright*, 953 A.2d at 148 (applying *de novo* review for failure to instruct on statutory defenses such as justification or instructions on lesser included offenses, but adopting an abuse of discretion standard for failure to give the instructions in the form proposed by the defendant).

largely comported with Waller's view. The only differences were that the trial judge adopted *Edwards'* use of the word "willfulness" and declined to provide a dictionary definition for that term. Waller's contention therefore is a dispute as to the form of the instruction—not a denial of a defense theory. Thus, we apply an abuse of discretion standard to Waller's claims.

(9)    Waller claims that the trial court's instructions were legally incorrect and confusing to the jury. As to legality, Waller contends that 21 *Del. C.* § 4103(b) implies an intentionality requirement, and that it was error to instruct the jury on "willfulness" without a dictionary definition.[30] As to confusion, Waller argues that once the trial court included an instruction that the State must prove "willful disregard" of a police officer's signal, it was obligated to provide a dictionary definition.[31] Waller also contends that leaving out a statutorily defined mental state resulted in jury confusion.

---

[30] Waller supports this argument by pointing to the language of the statute—to find guilt under Section 4103(b), a driver must "receive a signal" and continue to operate a vehicle "in disregard" of that signal—and Waller contends that statute implies that the driver must act intentionally. Reply Br. at 5.

[31] Waller does not argue that 11 *Del. C.* § 251 supplies a default *mens rea*. *Id*. at 3 ("Though Mr. Waller initially requested the inclusion of a mens rea requirement through Section 251(b) of Title 11, Appellant quickly abandoned Section 251(b) as a basis for his request."). Indeed, Waller does not dispute that *Edwards* controls the interpretation of the statute. *Id*. at 5. We agree that *Edwards* is applicable here.

(10)   Jury instructions should be read as a whole to determine whether the judge properly charged the jury.[32]   Generally, "a defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the substance of the law."[33]   This Court should not reverse a jury's verdict if the Superior Court's instructions were "reasonably informative and not misleading, judged by common practices and standards of verbal communication."[34]   "When the correctness of a jury instruction is raised on appeal, our analysis focuses 'not on whether any special words were used, but whether the instruction correctly stated the law and enabled the jury to perform its duty.'"[35]

(11)   Under 21 *Del. C.* § 4103(b), "[a]ny driver who, having received a visual or audible signal from a police officer identifiable by uniform, by motor vehicle or by a clearly discernible police signal to bring the driver's vehicle to a stop, operates the vehicle in disregard of the signal . . . shall be guilty" of disregarding a police officer's signal.[36]   In *Edwards*, this Court construed Section 4103(b) and held that the offense of disregarding a police officer's signal required a showing of

---

[32] *See Hankins*, 976 A.2d at 842 (citing *Flamer v. State*, 490 A.2d 104, 128 (Del. 1984)).

[33] *Bullock v. State*, 775 A.2d 1043, 1047 (Del. 2001) (citation omitted).

[34] *Burrell v. State,* 953 A.2d 957, 963 (Del. 2008) (citing *Cabrera v. State,* 747 A.2d 543, 544 (Del. 2000)).

[35] *Id*.

[36] 21 *Del. C.* § 4103(b).

8

willfulness.[37]  There, the defendant argued that the trial court erred in denying his motion for judgment of acquittal because the statute implied an element of willfulness, which the State did not show.  This Court agreed with the defendant that the statute required a showing of willfulness, but affirmed the lower court ruling on the basis that sufficient evidence existed that defendant "saw and deliberately disregarded the signals."[38]

(12)  We find no abuse of discretion here.  Following *Edwards*, the trial judge found that the offense of disregarding a police officer's signal implied a *mens rea* requirement and that to "leave out the 'required mental state' could result in jury confusion."[39]  Section 4103(b) requires that a driver "receive" a "signal from a police officer" and then operate the vehicle "in disregard" of that signal.[40]  According to *Edwards*, this language in the statute implies a showing of "willfulness."[41]  We see no fundamental difference in this context between willful and intentional conduct.  Indeed, Waller does not dispute that willfulness encompasses intentionality.[42]  Thus, it was neither misleading nor confusing for the court to instruct the jury as it did.

---

[37] 285 A.2d at 806.

[38] *Id*.

[39] App. to Opening Br. at A39.

[40] 21 *Del. C.* § 4103(b).

[41] 285 A.2d at 806.

[42] *See* Opening Br. at 16 (quoting Concise Oxford American Dictionary (2006) ("willful" as "(of an immoral or illegal act or omission) intentional; deliberate; willful acts of damage"); Merriam-

(13) For similar reasons, the court did not err in not providing the jury a dictionary definition for the term "willful." Waller argues that "willful" is not a legally recognized state of mind under 11 *Del. C* § 251, and that the jury's note itself was evidence of actual confusion, justifying reversal. But the jury ultimately reached a unanimous verdict after the trial judge reiterated its instructions to interpret undefined words in accordance with their commonly accepted meaning. Contrary to Waller's position, providing a dictionary definition would have been cumulative.[43]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

Webster's Collegiate Dictionary (11th ed. 2014) ("willful" as "1. obstinately and often perversely self-willed. 2. done deliberately; intentional"); Black's Law Dictionary (11th ed. 2019) ("willful" as "voluntary and intentional, but not necessarily malicious")).

[43] *See id.* Furthermore, undefined words or phrases in the Delaware code are "construed according to the common and approved usage of the English language." *See* 1 *Del. C.* § 303; *Moore v. Wilmington Housing Authority,* 619 A.2d 1166, 1173 (Del. 1993) ("[U]ndefined code terms must be construed according to their . . . approved usage."). Although the term "willful" does not appear in the statute defining the offense of disregarding a police officer's signal, it is a term that appears elsewhere in Title 21 of the Delaware code. *See, e.g.*, 21 *Del. C.* §§ 4172A (malicious mischief by motor vehicle), 4172(b) (drag racing), 4175(a) (reckless driving), and 4414 (willful abandonment). Accordingly, we do not find that the trial judge abused its discretion by instructing the jury to interpret "willful" according to its commonly accepted meaning.