IN THE SUPREME COURT OF THE STATE OF DELAWARE

RAYSHAUN JOHNSON, §
                                         §     No. 110, 2023
        Defendant Below,                 §
        Appellant,                       §     Court Below—Superior Court
                                         §     of the State of Delaware
        v.                               §
                                         §     Cr. ID No. 1503017603(N)
STATE OF DELAWARE,                       §
                                         §
        Appellee.                        §

Submitted: November 1, 2023
Decided:   December 12, 2023

Before **TRAYNOR, LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

Upon consideration of the briefs and the record below, it appears to the Court that:

(1)    Rayshaun Johnson has appealed the Superior Court's denial of his motion for postconviction relief under Superior Court Criminal Rule 61.[1]  He argues that the Superior Court erred when it held that his trial counsel's failure to seek the suppression of an eyewitness's pre-trial identification was not constitutionally deficient representation.  But, even if it was, we find that Johnson was not prejudiced.  We therefore affirm the Superior Court's judgment.

---

[1] *State v. Johnson*, 2023 WL 2495538, at *5 (Del. Super. Mar. 14, 2023) [hereinafter "*Super. Ct. Opinion*"].

(2) On April 3, 2014, Theodore Jackson was shot and killed at approximately 8:47 p.m. on the corner of Elm and Harrison Streets in Wilmington, Delaware. Wilmington police arrived on the scene shortly after the shooting and began investigating. They collected both .40-caliber and 9-millimeter shell casings as well as Jackson's clothes. Among the items of clothing was a pair of fatigue pants. Umar Mohammed, an eyewitness to the shooting, was at the scene when police arrived. The police took Mohammed, who was fourteen at the time, to Nemours Children's Hospital where he was interviewed by a Children's Advocacy Center forensic interviewer. During the interview, he stated that two men, each armed with a black pistol, approached Jackson and started shooting. Mohammed also observed that he could see their general physical characteristics, but not their faces.

(3) On May 21, 2014, Mohammed was interviewed again, this time by Wilmington Police detectives. During the interview, Mohammed confirmed that he had not clearly seen the faces of the shooters. He further explained that, if he was shown photos of their faces, he would be unable to remember who had committed the crime. Even so, the police showed Mohammed a photo lineup, and he identified Rayshaun Johnson as one of Jackson's shooters. Mohammed was unable to identify the second shooter from the photos.

2

(4)     On March 30, 2015, Johnson was indicted on charges of murder in the first degree, possession of a firearm during the commission of a felony, and conspiracy in the first degree.  During his February 2017 trial, the State presented three key witnesses.  Christopher Harris, an acquaintance of Johnson, testified that he, Johnson, and another man named Jeffery Clark were "hanging out" on the day of the shooting.[2]  Harris testified that Clark had received a threatening phone call that day, and that he was with Clark and Johnson as they drove around searching for the person who had made the call.  According to Harris, Clark and Johnson were looking for a man called "Murder" who was wearing a black jacket and fatigue pants. Harris testified that, once Clark found his target, Clark and Johnson, who were both armed with guns, got out of the car near the corner of Harrison and Elm Streets and walked away.  Harris recalled that after he heard several gunshots, Clark and Johnson returned to the car, and Clark said that they had gotten their target.

(5)     Marcel Swanson, another of the State's witnesses, testified that he spoke to Johnson three times on the day of the shooting.  Swanson testified that Johnson, accompanied by Harris, first spoke with him on the street and asked him if he knew someone named "Kyle" who was wearing a black shirt and fatigue pants. Swanson told the jury that later that day, at around 8:00 p.m., he spoke with Johnson again.  This time, Johnson was accompanied by Clark and Harris.  The three men

---

[2] App. to Opening Br. at A109 (Trial Transcript on Feb. 15, 2017).

approached him and once again asked him if he had seen Kyle. Swanson testified that Clark was very emotional and aggressive. After the three men left, Swanson testified that he walked down Van Buren Street toward Elm Street and, when he was about one block away from Elm Street, heard gun shots. Swanson testified that later that evening, Johnson called him and said: "[r]emember that boy Kyle I was telling you about? . . . I think we got him."[3]

(6) Mohammed also testified at the trial. He confirmed that he was with Jackson the night of the shooting. Mohammed recalled that he saw two men approach Jackson and that one of the men drew a black gun. Once he saw the gun, he ran away but heard multiple gunshots. Mohammed also testified that he had made a pre-trial identification of Johnson in a photo lineup. Johnson's counsel did not object to Mohammed's pre-trial identification of Johnson, opting instead to challenge him on cross-examination. As noted by the Superior Court, Johnson's trial counsel asked Mohammed several questions that could undermine the jury's confidence not only in his identification, but also in his overall credibility. Trial counsel specifically asked Mohammed to confirm that he had not seen the faces of the shooters and if he was lying when he selected Johnson in the photo lineup. He also noted the contradiction of identifying the face of the shooter despite not having

---

[3] App. to Opening Br. at A29 (Trial Transcript on Feb. 13, 2017).

seen the shooter's face. Trial counsel also attempted to create an inference that someone had suggested to Mohammed who he should pick out of the photo lineup.

(7) The jury found Johnson guilty of all charges, and he was sentenced to life imprisonment. This Court affirmed Johnson's convictions and sentence on direct appeal.[4] Following his conviction, Johnson timely filed a *pro se* motion for postconviction relief. In the motion, Johnson alleged that his trial counsel was ineffective by failing to move to suppress Mohammed's pre-trial identification. The court appointed counsel for Johnson, who amended the motion. Trial counsel submitted an affidavit in response to Johnson's motion, stating that "[c]ounsel's decision to not challenge the identification was . . . part of [a] defense strategy" intent on showing "that the witness was coached" and thereby undermining his credibility.[5] In its March 14, 2023 order, the Superior Court denied Johnson's motion because he had failed to establish that trial counsel was ineffective or that the alleged ineffectiveness resulted in prejudice, as required by *Strickland v. Washington*.[6] On appeal, Johnson contends that these two findings were in error. In the alternative, Johnson argues that under *Reed v. State*,[7] an evidentiary hearing is necessary for this Court to determine whether trial counsel was ineffective.

---

[4] *Johnson v. State*, 217 A.3d 700, 2019 WL 4180617, at *1 (Del. Sept. 3, 2019) (ORDER) [hereinafter "*Supreme Ct. Order*"].
[5] App. to Opening Br. at A316–17.
[6] *Super. Ct. Order*, 2023 WL 2495538, at *5; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[7] 258 A.3d 807 (Del. 2021).

(8)     This Court reviews the denial of a motion for postconviction relief for abuse of discretion.[8]  We review ineffective assistance of counsel claims *de novo*.[9] When reviewing the Superior Court's denial of a motion for postconviction relief, this Court must first consider the procedural requirements of Rule 61 before addressing substantive issues.[10]  We agree with the Superior Court that Johnson's claims are not procedurally barred.  We will therefore address the substance of Johnson's claim of ineffective assistance of counsel.

(9)     To prevail on an ineffective assistance of counsel claim, a defendant must show "both deficient performance by counsel and prejudice."[11]  To show deficient performance, a defendant must demonstrate that trial counsel's representation fell below an objective standard of reasonableness.[12]  Recognizing that hindsight can have a "distorting effect[]," we apply a strong presumption that trial counsel's representation was professionally reasonable.[13]  And "[i]f an attorney

---

[8] *Green v. State*, 238 A.3d 160, 173 (Del. 2020) (citing *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013)).
[9] *Id.*
[10] *Bradley v. State*, 135 A.3d 748, 756–57 (Del. 2016) (citing *Younger v. State*, 580 A.2d 552, 554 (Del. 1990)).
[11] *Wright v.* State, 2023 WL 7125201, at *2 (Del. Oct. 30, 2023) (ORDER) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010)).
[12] *Green*, 238 A.3d at 174.
[13] *Strickland*, 466 U.S. at 689; *Gattis v. State*, 697 A.2d 1174, 1178 (Del. 1997) (citing *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996)).

makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options,' that decision is virtually unchallengeable[.]"[14]

(10) To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[15] A reasonable probability is a probability sufficient to undermine confidence in the outcome; this standard is lower than "more likely than not."[16] When evaluating whether Johnson was prejudiced, we must consider the totality of the evidence before the jury.[17]

(11) The record shows that trial counsel's trial strategy was reasonable.[18] Suppression of Mohammed's pre-trial identification would have made presentation of the police's alleged coaching of Mohammed and Mohammed's lack of memory during the identification process impossible. Without this evidence, it would be difficult to impeach Mohammed's other damaging testimony such as his statement

---

[14] *Purnell v. State*, 106 A.3d 337, 342 (Del. 2014) (quoting *Hoskins v. State*, 102 A.3d 724, 730 (2014)).

[15] *Strickland*, 466 U.S. at 694.

[16] *Ploof*, 75 A.3d at 821 (citing *Strickland*, 466 U.S. at 693–94).

[17] *Strickland*, 466 U.S. at 694.

[18] A failure to seek a potentially meritorious motion to suppress is not unreasonable where doing so would undermine trial strategy. *Pennewell v. State*, 884 A.2d 512, 2005 WL 578444, at *1 (Del. Jan. 26, 2005) (ORDER); *see also Martin v. State*, 561 A.2d 993, 1989 WL 68291, at *3 (Del. May 15, 1989) (ORDER) (citing *Strickland*, 466 U.S. 668, 688, 694 (1984)) (finding trial counsel's strategic decision not to seek suppression of the victim's out-of-court identification, "because the identification was weak, and its weakness was potentially helpful to his client" to be a reasonable one); *People v. Hobley*, 696 N.E.2d 313, 337 (Ill. 1998) (finding no ineffectiveness where counsel decided not to seek suppression of a lineup identification but instead opted to present evidence of police misconduct during the identification and witness uncertainty to the jury).

that there were two guns and his description of the general physical characteristics of each of the shooters. Further, there was little risk in allowing the photo-lineup identification to be presented to the jury, because, as Johnson acknowledges, it could easily be shown as unreliable. Because the record is sufficient to determine that Johnson's counsel was not ineffective, an evidentiary hearing under *Reed* is unnecessary.[19]

(12) But even if counsel's failure to seek the suppression of Mohammed's pre-trial identification were viewed as deficient, Johnson has failed to show prejudice under *Strickland*'s second prong. Given the strength of the evidence before the jury, there is not a reasonable probability that suppression of the photo-lineup identification would have changed the trial's outcome.[20] Leaving aside Mohammed's pre-trial identification, the evidence against Johnson was overwhelming. As we noted on direct appeal, the jury heard testimony from multiple witnesses that Johnson was looking for the victim on the evening of the shooting and that he was armed. Wilmington police found shell casings of two different calibers,

---

[19] *Reed*, 258 A.3d at 825–26.

[20] *See, e.g.*, *Drummond v. State*, 803 A.2d 427, 2002 WL 1472281, at \*2 (Del. 2002) (ORDER) ("[I]n view of the overwhelming evidence of [the defendant's] guilt, . . . [he] cannot establish actual prejudice from his trial counsel's failure to more thoroughly cross-examine [the arresting officer]."); *Wright*, 2023 WL 7125201, at \*2 (citing *Neal v. State*, 80 A.3d 935, 946 (Del. 2013)) (holding trial counsel's failure to request an alibi instruction did not prejudice defendant given overwhelming evidence of guilt); *State v. Stallings*, 2018 WL 3655862, at \*11 (Del. Super. July 18, 2018) (holding trial counsel's failure to investigate cellphone records did not prejudice defendant given overwhelming evidence of guilt).

corroborating eyewitness testimony that there were two weapons and two shooters. Finally, and even more damaging, the evidence showed that Johnson himself made a statement admitting his participation in the crime.[21]

(13)   Johnson's attempts to cast doubt on the overwhelming evidence against him are unavailing.  Johnson argues that the State's witnesses, specifically Harris and Swanson, were not credible because they received plea bargains in exchange for their testimony.  The jury, however, found the State's witnesses credible and found Johnson guilty of all charges.  Because it is within the jury's province to determine the credibility of witnesses, Johnson's argument fails.[22]   There is no reasonable probability that the exclusion of Mohammed's identification would have changed the result of Johnson's trial.  The Superior Court, therefore, did not err when it found no prejudice.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *N. Christopher Griffiths*
Justice

---

[21] *Supreme Ct. Order*, 2019 WL 4180617, at *1 n.1; App. to Opening Br. at A29 (Trial Transcript on Feb. 13, 2017) ("Remember the boy Kyle I was telling you about? . . . I think we got him.").
[22] *Mitchell v. State*, 35 A.3d 419, 2012 WL 112602, at *2 (Del. Jan. 12, 2012) (ORDER).