**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | |
| **v.** | ) | **ID No. 2205001959** |
| | ) | |
| **MELVIN L. EARL,** | ) | |
| **Defendant.** | ) | |

Submitted: December 8, 2025
Decided: March 5, 2026

*Upon Defendant Melvin L. Earl's*
*Motion for Postconviction Relief,*
**DENIED**.

## ORDER

Upon consideration of the Defendant's Motion for Postconviction Relief (D.I. 32), the State's response (D.I. 64), his trial/plea counsel's affidavit (D.I. 55), Defendant's reply (D.I. 65) and various supplementals (D.I. 72, 73, 74, 75, 82, 85, 86, 87), the State's supplemental response (D.I. 84), and the record in this matter, it appears to the Court that:

### FACTUAL AND PROCEDURAL BACKGROUND

(1)   In November 2022, Defendant Melvin L. Earl, Jr.,  was indicted for two counts of first-degree rape, three counts for first-degree unlawful sexual contact, one count of first-degree sexual abuse of a child by a person of trust, and one count of

second-degree sexual abuse of a child by a person of trust.[1]

(2) These multiple offenses arose from the sexual abuse of an 8-year-old little girl with whom the then-55-year-old defendant had a distant familial relationship. Evidence of this behavior included video recordings of oral copulation between the two. Mr. Earl's explanation for this degeneracy: The child was the "aggressor," "all of this was [the child's] idea. She never discussed this with me beforehand. She just did things to me."[2]

(3) At his final case review, Mr. Earl pleaded guilty to a single count of rape in the first degree.[3] He did so in exchange for the State's: dismissal of the six other felony counts charging various forms of sexual abuse of the eight-year-old; withholding of a petition for application of a particular statutory sentence enhancement; and, favorable sentencing recommendation.[4]

(4) Mr. Earl's sentencing occurred several months later, after a comprehensive presentence investigative (PSI) report was prepared. In addition to

---

[1]   D.I. 6 (Indictment).

[2]   These were statements made during the presentence investigation process. *See* Sentencing Tr. at 3-5, 8 (D.I. 13) (both counsel recounting the troubling nature of Mr. Earl's comments during the presentence investigation). The Court notes that at other times prior to and since sentencing, Mr. Earl has said: "I am fully responsible for this whole incident. She is not to blame for any of this. I myself was totally wrong. I Melvin Earl am the adult in this matter. . . . There is no one to blame but myself. I'm sorry." *See id.* at 7, 10-11 (Def.'s Sent. Ex. 1 (Mr. Earl's day-of-sentencing letter expressing remorse)).

[3]   D.I. 9 (Plea Agreement).

[4]   *Id.* at 1 ("State will agree to cap the recommendation for unsuspended Level 5 time at 20 years. . . . State agrees not to seek enhancement of sentence pursuant to 11 Del. C. 4205A.").

the materials compiled in that PSI report, the defense filed its own supplemental sentencing memorandum. All of that was thoroughly examined by the Court before the sentencing hearing.[5] The Court also considered the parties' sentencing presentations, Mr. Earl's final written statement of remorse, and his allocution before imposing his sentence.[6]

(5) Mr. Earl was sentenced as follows for the rape in the first degree count: 50 years at Level V, suspended after he serves 20 years imprisonment, for 30 years of Level IV supervision, suspended after 6 months of Level IV supervision, for two years of intensive community supervision.[7]

(6) His 20-year period of unsuspended imprisonment is comprised, in part, of a 15-year term that must be imposed under Delaware's first-degree rape statute.[8] The Court imposed the remaining 5 years as an exercise of its own sentencing judgment.[9]

(7) At the time of sentencing, the Court noted the aggravating and mitigating circumstances it found:

> To the extent the sentence might exceed the SENTAC presumptive sentence for the offense as pleaded to, the Court

---

[5]   Sentencing Tr. at 2-3.

[6]   *Id*. at 3-11; Def.'s Sent. Ex. 1.

[7]   D.I. 11 (Sentencing Order).

[8]   Sentencing Order at 2. *See* DEL. CODE ANN. tit. 11, §§ 773, 531, and 4205(b)(1) (2021) (first-degree rape is a class A felony carrying a statutory minimum of 15 years at Level V).

[9]   Sentencing Tr. at 12.

notes the Defendant's victim blaming—which has only recently changed—brings into doubt his true level of remorse. The victim in this case was a very young child who was particularly vulnerable due to the living circumstances of the Defendant and victim. The Court has considered the Defendant's obvious mental health issues and medical circumstances.[10]

(8) Mr. Earl prosecuted no direct appeal from his conviction or sentence. But he immediately began docketing *pro se* applications under Superior Court Criminal Rule 35 challenging the legality of or requesting reduction of his prison term.[11]

(9) The Court considered these on their merits.[12] Upon Rule 35 review, the Court fully examined Mr. Earl's applications, the relevant law, the record of his case, his prior history, all materials provided with his correction of sentence and sentence-reduction motion, and all sentencing information available. The Court found that when all those materials and the sentencing factors in Mr. Earl's case were reconsidered, a sentence reduction was not warranted, and the sentence was legal as imposed.[13]

---

[10] Sentencing Order, 3; Sentencing Tr., 12–15 (the Court articulating the various aggravating and mitigating circumstances); *see* DEL. CODE ANN. tit. 11, § 4204(n) (2021) ("Whenever a court imposes a sentence inconsistent with the presumptive sentences adopted by the Sentencing Accountability Commission, such court shall set forth on the record its reasons for imposing such penalty."); *see also White v. State*, 243 A.3d 381, 410–11 (Del. 2021) (identifying Delaware Supreme Court Administrative Directive No. 76 as another source for the requirement).

[11] *E.g.* D.I. 12 (first *pro se* filing docketed 11 days after sentencing), 15, 18, 22, 25, 29.

[12] *See* D.I. 45.

[13] *See generally State v. Earl*, 2024 WL 5237633 (Del. Super. Ct. Dec. 16, 2024), *appeal dismissed*, 2025 WL 755723 (Del. Feb. 24, 2025). Thereafter, Mr. Earl docketed another

-4-

(10) Now before the Court is Mr. Earl's timely Motion for Postconviction Relief that he has filed under Superior Court Criminal Rule 61.[14] In his motion, Mr. Earl challenges the validity of his plea and sentencing proceedings, asserting claims of ineffective assistance of counsel and related constitutional violations.[15] Specifically, Mr. Earl alleges that his trial/plea counsel, Erika B. LaCon, Esquire, was deficient in the following respects: (a) failing to assert or adequately pursue an insanity defense; (b) violating a court order by failing to submit a defense expert before the deadline established by his case scheduling order; and (c) failing to docket various medical records that Mr. Earl contends would have supported an insanity defense—this alleged failure by his counsel he characterizes as a *Brady* violation.[16] Mr. Earl also requests that the Court conduct an evidentiary hearing to address his claims.[17]

## RULE 61's PROCEDURAL BARS

(11) Delaware courts must consider Criminal Rule 61's procedural

---

unsuccessful Rule 35(a) motion. D.I. 57 and 59. That denial was affirmed. *Earl v. State*, 2025 WL 2083036 (Del. July 23, 2025).

[14] Def.'s Op. Br. Postconviction Relief (D.I. 33).

[15] Def.'s Op. Br. Postconviction Relief.

[16] *See generally* Def.'s Op. Br. Postconviction Relief; Def.'s Resp. (D.I. 65); Def.'s Suppl. (D.I. 72, 73, 74, 75, 82, 85, 86, 87). Mr. Earl has docketed multiple supplemental submissions. The filings primarily address what he calls a "*Brady* violation" and are docket items 73, 74, 75, 82, 85, 86, and 87. The documents addressing the alleged violation of the court order are docket items 86 and 87. As many of these filings are repetitive, the Court will refer to them collectively as "Def.'s Suppl." unless otherwise specified.

[17] *See generally* Def.'s Op. Br. Postconviction Relief; Def.'s Resp.; Def.'s Suppl.

requirements before addressing any substantive issues.[18] The procedural bars set out within Rule 61 are timeliness, repetitiveness, procedural default, and former adjudication.[19] Of these, only one is relevant here.

(12) Rule 61(i)(3) bars any particular claim that could have been but was not raised at the trial/plea proceedings or on direct appeal, unless the defendant can show cause for relief from the procedural default and prejudice.[20] Generally, Rule 61(i)(3) is inapplicable to claims of ineffective assistance of counsel—which in the norm can't be raised against trial/plea counsel on direct appeal.[21] And so, the Court usually considers those claims on their merits during postconviction proceedings.[22]

### MR. EARL'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM FAILS.

(13) A claim of ineffective assistance of counsel is reviewed under the familiar two-part *Strickland v. Washington* test.[23] A claimant asserting ineffective

---

[18] *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

[19] Del. Super. Ct. R. P. 61(i); *State v. Peters*, 283 A.3d 668, 680 (Del. Super. Ct. 2022), *aff'd*, 299 A.3d 1 (Del. 2023).

[20] Super. Ct. Crim. R. 61(i)(3) ("Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows . . . [c]ause for relief from the procedural default and . . . [p]rejudice from violation of the movant's rights.").

[21] *Green v. State*, 238 A.3d 160, 175 (Del. 2020); *see State v. Caulk*, 2021 WL 2662250, at *5 (Del. Super. Ct. June 29, 2021) ("Though [the Rule 61(i)(3)] bar is inapplicable to allegations of ineffective assistance of counsel that, in all but the rarest of circumstances, couldn't have been raised on direct appeal.").

[22] *State v. Martin*, 2024 WL 3273429, at *2 (Del. Super. Ct. July 1, 2024), .

[23] *Neal v. State*, 80 A.3d 935, 941 (Del. 2013); *see generally Strickland v. Washington*, 466 U.S. 668 (1984).

-6-

assistance of counsel must demonstrate that: (i) his defense counsel's representation fell below an objective standard of reasonableness and (ii) there is a reasonable probability that, but for counsel's errors, the result of his proceedings would have been different—often referred to as the "prejudice prong."[24] An inmate must satisfy the proof requirements of both prongs—deficient performance and prejudice—to succeed in making an ineffective assistance of counsel claim.[25] Failure to do so on either will doom the claim, in which case, the Court need not address the other.[26]

(14) The Court first turns to Mr. Earl's complaints of deficient performance. To satisfy the performance prong, Mr. Earl must show that counsel's conduct fell below an objective standard of reasonableness—such "that no reasonable lawyer would have conducted the defense as his lawyer did."[27] There is always a strong presumption that counsel's representation was reasonable.[28] "Judicial scrutiny of counsel's performance [is] highly deferential."[29] It is now well-accepted, that where "an attorney makes a strategic choice after thorough investigation of law and facts relevant to plausible options, the presumption that an attorney acted reasonably is

---

[24] *Strickland*, 466 U.S. at 688–94 (1984); *Neal*, 80 A.3d at 941–42.

[25] *Strickland*, 466 U.S. at 687; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013)(*Ploof I*); *Neal*, 80 A.3d at 942; *Peters*, 283 A.3d at 681.

[26] *Strickland*, 466 U.S. at 687; *Ploof I*, 75 A.3d at 825; *Peters*, 283 A.3d at 681.

[27] *Green*, 238 A.3d at 174 (citing *Burger v. Kemp*, 483 U.S. 776, 791 (1987)); *Strickland*, 466 U.S. at 687.

[28] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[29] *Strickland*, 466 U.S. at 689; *Cooke v. State*, 339 A.3d 418, 455 (Del. 2025).

virtually unchallengeable."[30]  And in no instance is defense counsel required to pursue claims or defenses that have no merit.[31]  Indeed, counsel is ethically prohibited from asserting claims that lack a good-faith factual and legal foundation.[32]

(15)  Mr. Earl insists that Ms. LaCon was constitutionally ineffective when she did not pursue an insanity defense in his case.[33]  He says that Ms. LaCon failed to discuss an insanity defense with him.[34]  And as best the Court can glean, that she was derelict by not submitting various materials nor engage a mental health expert to testify about his mental condition before his plea was entered.[35]  Thus, according to Mr. Earl, his guilty plea was defective and unconstitutional.[36]  But these charges are belied by the postconviction record.

(16)  The record reflects that Ms. LaCon was aware of Mr. Earl's mental

---

[30]  *Cooke*, 338 A.3d at 455 (cleaned up); *Purnell v. State*, 106 A.3d 337, 342 (Del. 2014); *Hoskins v. State*, 102 A.3d 724, 733 (Del. 2014) (quoting *Ploof v. State*, 75 A.3d 840, 852 (Del. 2013) (*Ploof II*) (quoting *Strickland*, 466 U.S. at 690-91)).

[31]  *State v. Thomas*, 2024 WL 5117117, at *7 (Del. Super. Ct. Dec. 16, 2024) ("[C]ounsel can never be deemed *Strickland* ineffective for failing to make an otherwise futile or inconsequential argument.") (citing *Peters*, 283 A.3d at 680; *State v. Prince*, 2022 WL 211704, at *7 (Del. Super. Ct. Jan. 24, 2022) (collecting cases)); *Norcross v. Metzger*, 2020 WL 1532370, at *22 (D. Del. Mar. 31, 2020) ("It is well-settled that an attorney's failure to raise meritless objections or arguments does not constitute ineffective assistance."); *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

[32]  *See generally* Del. Lawyers' R. Prof'l Conduct 3.1 ("A lawyer shall not . . . assert . . . an issue [in a proceeding], unless there is a basis in law and fact for doing so that is not frivolous").

[33]  *See generally* Def.'s Op. Br. Postconviction Relief; Def.'s Resp.; Def.'s Suppl.

[34]  Def.'s Resp. 5.

[35]  *See generally* Def.'s Suppl.

[36]  *See generally* Def.'s Op. Br. Postconviction Relief; Def.'s Resp.; Def.'s Suppl.

health history and of his expressed desire to pursue an insanity defense.[37]  Counsel reviewed Mr. Earl's medical and mental health information, discussed the issue with him, and determined that there was no good faith basis for any viable mental health defense to his culpability for the child sexual abuse crimes charged.[38]  The materials submitted to the Court evidence that Ms. LaCon investigated and was abreast of the defense.[39]  She found that she couldn't assert the defense because she didn't find it was merited.[40]  In her estimation, no valid "insanity" defense could be mustered.  It

---

[37]  Ms. LaCon's Affidavit Pursuant to Superior Court Criminal Rule 61(g) (D.I. 55); Supporting Materials Under Rule 61(g) (D.I. 78) [hereinafter Def.'s Records in Supp. of Rule 61 Motion].

[38]  Ms. LaCon's Affidavit Pursuant to Superior Court Criminal Rule 61(g); Def.'s Records in Supp. of Rule 61 Motion.  Mr. Earl disagrees that he discussed the insanity defense with Ms. LaCon and that letters he wrote Ms. LaCon demonstrate that the defense was not pursued. *See* Def.'s Resp. 7–10 ("My argument is that the insanity defense [conversation] she is speaking of never took place. . . . I can prove my defense by letters that I've written her . . .").  Mr. Earl's letters and materials evidence the opposite—they demonstrate that the insanity defense was considered and discussed by Ms. LaCon and Mr. Earl. *See generally* Letter from Mr. Earl to Ms. LaCon (Nov. 16, 2022) ("I've been thinking if a guilty by insanity plea would be the appropriate thing to do.") (D.I. 78); Ms. LaCon's Affidavit Pursuant to Superior Court Criminal Rule 61(g) ("On December 9, 2022, Mr. Earl inquired about an insanity defense in a conversation we had over Zoom.  I advised that I would not pursue an insanity defense because I lacked a good faith basis to do so . . ."); Letter from Mr. Earl to Ms. LaCon (April 6, 2023) ("I will sign for 15 . . . . Or not guilty by insanity. I have to pay for what I did.") (D.I. 78). During his plea colloquy, Mr. Earl confirmed that he had discussed the defenses available to him with Ms. LaCon. Plea Hearing Tr. 8–14.

[39]  The Court had ordered expansion of the record to have Ms. LaCon submit "communications or additional materials . . . to include: (a) any recordation of communications between Mr. Earl and his counsel (or those working on her behalf) related to     Mr. Earl's alleged mental health issues or potential defenses; and (b) any of Mr. Earl's mental health or treatment records collected by defense counsel in her representation of  Mr. Earl." D.I. 71.  Those materials were provided under seal and consist of hundreds of pages of communications between counsel and client, as well as, social, mental health, and medical records stretching back to Mr. Earl's adolescence.  D.I. 78-81.

[40]  Ms. LaCon's Affidavit Pursuant to Superior Court Criminal Rule 61(g).

seems that is simply not something Mr. Earl has ever wanted to hear. But when warranted, it is precisely the type of advice that effective counsel is expected give.[41]

(17) Even still, Ms. LaCon attempted to utilize Mr. Earl's background throughout her representation. She shared evidence of Mr. Earl's mental health issues during plea negotiations. During his plea colloquy, Mr. Earl said that he discussed the defenses he believed were available to him with Ms. LaCon and was ultimately satisfied with her as his counsel.[42] And during Mr. Earl's sentencing, Ms. LaCon highlighted his mental health issues and need for treatment as a mitigating factor.[43]

(18) There simply was nothing deficient or unreasonable about Ms. LaCon's approach to Mr. Earl's mental health information. No doubt, she was aware of the

---

[41] *See State v. Dillard*, 2019 WL 118437, at *5 (Del. Super. Ct. Jan. 4, 2019) ("A criminal defense attorney must provide truthful information and informed legal advice; not just mouth what her client may want to hear. Doing so is required; not objectively unreasonable."); *State v. Rivera*, 2015 WL 4594155, at *3 (Del. Super. Ct. July 29, 2015), *appeal dismissed*, 2015 WL 5439949 (Del. Sept. 14, 2015) ("A defense attorney who does not objectively assess a case, advising the client accordingly, does a disservice to the client in the end. It is the job of a criminal defense attorney to be frank and honest with his or her client; it is *not* the job of a defense attorney to simply mollify the situation by telling the client what he or she "wants" to hear during the course of the case.") (emphasis in original).

[42] Plea Hearing Tr. 13–14.

[43] *E.g.* Sentencing Tr. 9–11 ("The defense is asking for 15 years . . . . Obviously any significant jail time given his age, his medical history, his mental health and his substance abuse history, all of which played a role in what happened, will need to be treated and can be treated within 15 years certainly.") Mr. Earl's mental health was considered by all parties and the Court. *E.g.* Sentencing Order, 3; Sentencing Tr., 12–15 ("The Court has noted a mitigator and that is the defendant's obvious mental health issues and medical circumstances that have been documented for the court.").

applicable legal standards and had developed a full understanding of Mr. Earl's social, medical, and mental health history. She had used it to obtain the best plea bargain possible for her client and to try to convince the Court to impose the most favorable sentence within the range both the State and Mr. Earl had agreed to. Given the damning evidence of guilt and the paucity of other options—including no real chance to mount the insanity defense which Mr. Earl wished and still wishes for—this tack was wholly reasonable.[44]

(19) The analysis could end there[45] but even were Mr. Earl to demonstrate the requisite deficient attorney performance on his insanity defense claim—which, again, he hasn't—he falls well short of demonstrating resultant and required prejudice.

(20) When addressing the prejudice prong of the ineffective assistance of counsel test in the context of a challenged guilty plea, an inmate must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[46] And when addressing

---

[44] *See Sartin v. State*, 2014 WL 5392047, at *3 (Del. Oct. 21, 2014) (no ineffectiveness where counsel determined his client's mental health issues didn't rise to the level of a viable defense, but counsel tried to use issues to lessen the severity of his sentence).

[45] *Strickland*, 466 U.S. at 687; *Ploof I*, 75 A.3d at 825; *Peters*, 283 A.3d at 681 ("A movant must satisfy both prongs—deficient attorney performance and resulting prejudice—to succeed in making an ineffective assistance of counsel claim. Failure to do so on either prong will doom the claim, and the Court need not address the other.").

[46] *Albury v. State*, 551 A.2d 53, 60 (Del. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *Sartin v. State*, 2014 WL 5392047, at *2 (Del. Oct. 21, 2014); *State v. Hackett*, 2005 WL 3060976,

the prejudice prong of the ineffective assistance of counsel test in the context of a sentencing hearing, an inmate must show that "there is a reasonable probability that, but for counsel's error, the result of [his] sentencing would have been different."[47]

(21) Now for either, "*Strickland*'s second part—the prejudice prong—presents another arduous standard."[48] "The likelihood of a different result must be substantial, not just conceivable."[49] And while the "objective inquiry is not mathematically precise," there can only be a finding of the required prejudice "when there is a substantial likelihood—*i.e.*, a meaningful chance—that a different outcome would have occurred but for counsel's deficient performance."[50]

(22) It appears Mr. Earl he is saying that had his counsel better-developed an insanity (or other mental illness) defense, he would have been offered and entered a more favorable plea or insisted on pressing to trial and been found not guilty by reason of insanity.[51]

---

at *3 (Del. Super. Ct. Nov. 15, 2005).

[47] *Brawley v. State*, 1992 WL 353838, at *1 (Del. Oct. 7, 1992); *State v. Lindsey*, 2023 WL 2535895, at * 10 (Del. Super. Ct. Mar. 16, 2023), *aff'd*, 2023 WL 8232287 (Del. Nov. 27, 2023).

[48] *Cooke*, 338 A.3d at 455 (citing Green, 238 A.3d at 174).

[49] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)); *see Strickland*, 466 U.S. at 693 ("It is not enough for the [postconviction movant] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." (citation omitted)).

[50] *Baynum v. State*, 211 A.3d 1075, 1084 (Del. 2019) (citing *Harrington*, 562 U.S. at 112).

[51] Def.'s Op. Br. Postconviction Relief, 6–9 ("Had Mr. Earl been presented with a viable option to proceeding to trial he would have utilized this option, as such based upon counsel's

(23) An insanity defense is available only where, at the time of the conduct charged and "as a result of mental illness or serious mental disorder," the defendant "lacked substantial capacity to appreciate the wrongfulness of [his] conduct."[52] And the burden of proof on and NGRI claim rests squarely on the defendant.[53]

(24) Nothing in the presentence investigation, in counsel's affidavit, in the litany of materials Mr. Earl has submitted or directed the Court to review, nor in the Court's own examination of the entirety of the record in this matter, revealed credible—much less the compelling—evidence that would be necessary to mount the sort of mental health defense that could defeat a finding of guilt.[54] The record

---

ineffectiveness Mr. Earl entered an invalid plea."); Letter from Mr. Earl to the Court (September 9, 2025) (D.I. 74) (stating that if Ms. LaCon had provided his mental health materials to the prosecution, then a different outcome would have been possible).

[52] *See* DEL. CODE ANN. tit. 11, § 401(a) (2023) (defining what is needed to support a Not Guilty by Reason of Insanity ("NGRI") verdict). The defendant can also claim that he "suffered from a mental illness or serious mental disorder which substantially disturbed such person's thinking, feeling or behavior and/or that such mental illness or serious mental disorder left such person with insufficient willpower to choose whether the person would do the act or refrain from doing it, although physically capable, the trier of fact shall return a verdict of 'guilty, but mentally ill.'" *Id.* at § 401(b) (otherwise known as GBMI). That, of course, is less advantageous because it doesn't truly affect criminal liability or stave off conviction—it only governs where the GBMI convict's sentence is served. *See generally id.* at § 408(b); *see also State v. Calhoun*, 2024 WL 261329, at *9-10 (Del. Super. Ct. Jan. 23, 2024), *aff'd*, 331 A.3d 1268 (Del. 2024) (explaining the distinction between "insanity" and "mental illness"). Whichever Mr. Earl argues he would have claimed, the analysis here remains the same.

[53] *See Sanders v. State*, 585 A.2d 117, 131 (Del. 1990) ("if the burden of proving mental illness were placed upon the State, it would never undertake that burden, and defendants . . . would always be found 'guilty'"); *Calhoun*, 2024 WL 261329, at *10 ("And no doubt, whether one lacked the substantial capacity to appreciate the wrongfulness of his conduct is a finding of fact the defendant must attain.") (citing 11 *Del. C.* § 401(a)).

[54] Mr. Earl identifies his mental health records as the most significant evidence in support of his claim. The Court has reviewed the extensive records submitted. *See* Def.'s Suppl.; Def.'s Records in Supp. of Rule 61 Motion. Those records reflect a lengthy and complex history of anxiety,

supports no more than this: that at different points in his life, Mr. Earl experienced anxiety, depression, and similar personal difficulties. Mr. Earl wasn't afflicted with a condition and subsequent mental state that one can rely (and counsel ethically argue) for an affirmative insanity defense.[55] So, there is no reasonable probability that an NGRI verdict would have been attainable at trial.

(25) Mr. Earl's argument that an insanity defense was left unasserted by his counsel, standing alone, cannot result in the setting aside of his conviction.[56] Accordingly, his ineffective assistance of counsel claim fails.

## MR. EARL'S MISLABELED "*BRADY* VIOLATION" CLAIM HAS NO MERIT.

(26) Mr. Earl contends that he is entitled to postconviction relief based on an alleged violation of *Brady v. Maryland*.[57] But Mr. Earl's mere penning "*Brady* violation" is unavailing—he has identified neither material that would be considered

---

depression, and other physical and mental health issues dating back to Mr. Earl's childhood—starting with an early diagnosis of "Conduct Disorder" and including later periods of marked by substance abuse, strokes, and related complications. *See generally* Def.'s Records in Supp. of Rule 61 Motion. These records also include those from Psychiatrist Patricia Hutkin, whom Mr. Earl suggests could have been his expert witness. *See* Def.'s Suppl.; Def.'s Records in Supp. of Rule 61 Motion.

Upon the Court's exacting review or the now expanded record, it is clear that nothing in the records support a conclusion that Mr. Earl had a mental illness or a serious mental disorder such that he lacked substantial capacity to appreciate the wrongfulness of his conduct when he committed his rape upon a young child. *See* DEL. CODE ANN. tit. 11, § 401 (2023); *Sanders*, 585 A.2d at 123–26; *Calhoun*, 2024 WL 261329, at *9-10.

[55] *See Sanders*, 585 A.2d at 123–26; *Calhoun*, 2024 WL 261329, at *9-10.

[56] *Sartin v. State*, 2014 WL 5392047, at *3 (Del. Oct. 21, 2014).

[57] *See generally* Def.'s Mot. for a Brady Violation (D.I 82).

-14-

"*Brady* material" nor any act by the State that could be deemed a "*Brady* violation."[58]

A *Brady* violation arises only when the *State* suppresses material evidence that is favorable to the accused; put another way, it must be evidence that was in the State's possession or control and that was withheld from the defense.[59]

(27)  But Mr. Earl alleges that it was *his* counsel who committed a *Brady* violation by "depriving [him] of his right to an expert witness" and not sharing "particular records" with the Court, the prosecution, and himself.[60]  Each record Mr. Earl references pertains to his own medical and mental health history, that information was available to him and to his counsel throughout the proceedings[61] and his counsel's proper use of that information has been explained above.  Because there was no suppression of evidence by the State, no *Brady* violation could have occurred.[62]  Thus, this argument fails as a matter of law.[63]

---

[58]  *See Michael v. State*, 529 A.2d 752, 755 (Del. 1987) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)) (defining *Brady* material as "evidence favorable to the defendant and material either to guilt or punishment"); *Starling v. State*, 882 A.2d 747, 756 (Del. 2005) (describing the three components of a *Brady* violation: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant").

[59]  *See generally Brady*, 373 U.S. 83 (1963); *Wright v. State*, 91 A.3d 972, 988–89 (Del. 2014); *Atkinson v. State*, 778 A.2d 1058, 1063 (Del. 2001).

[60]  Def.'s Mot. for a Brady Violation, 2 (cleaned up) (emphasis omitted).

[61]  *See generally* Def.'s Mot. for a Brady Violation.

[62]  Mr. Earl agrees that the State didn't withhold any of the information he's speaking of. Def.'s Mot. for a Brady Violation ("The Prosicution [sic], Mr. Earl, and Judge Wallace are now in possession of these missing records.").

[63]  *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984) (quoting *United States v. Campagnuolo*, 592 F.2d 852, 861 (5th Cir. 1979)) ("[T]he government is not obliged under *Brady*

## NO EVIDENTIARY HEARING IS NECESSARY.

(28)  Mr. Earl requests that the Court conduct an evidentiary hearing into the above matters.[64]  Under Superior Court Criminal Rule 61(h), the decision to hold an evidentiary hearing rests within the Court's discretion.[65]  And where it is apparent from the contents of a postconviction motion, the responses thereto, the record of prior proceedings, and any added materials that the petitioner is not entitled to relief, there is no need for an evidentiary hearing.[66]  Just so here.  Mr. Earl hasn't identified an issue that would warrant further evidentiary development,[67] particularly given the Court's extensive familiarity with his case at this point. [68]

---

to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself."); *United States v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005), *as amended* (Mar. 8, 2005) (same); *State v. McGuiness*, 2022 WL 1580601, at *4 (Del. Super. Ct. May 18, 2022) (same).

[64]  Def.'s Op. Br. Postconviction Relief; Def.'s Resp.; Def.'s Suppl.

[65]  *Johnson v. State*, 2015 WL 8528889, at *4 (Del. Dec. 10, 2015).

[66]  *Id.* at *4 (quoting *Hawkins*, 2003 WL 22957025, at *1).  *See also* Del. Super. Ct. Crim. R. P. 61(h) (2026) which provides:

> (h) Evidentiary Hearing.
>
> > (1) *Determination by Court.* After considering the motion for postconviction relief, the state's response, the movant's reply, if any, the record of prior proceedings in the case, and any added materials, the judge shall determine whether an evidentiary hearing is desirable.
>
> > *             *             *
>
> > (3) *Summary Disposition.* If it appears that an evidentiary hearing is not desirable, the judge shall make such disposition of the motion as justice dictates.

[67]  *See Jones v. State*, 2025 WL 274887, at *3, n.14 (Del. Jan. 23, 2025) (collecting cases).

[68]  *See Outten v. State*, 720 A.2d 547, 551 (Del. 1998) ("Given the trial judge's extensive familiarity with the background, we are unable to conclude that he abused his discretion in

-16-

(29) Mr. Earl has proved neither deficient performance by counsel nor the prejudice required for postconviction relief to be granted on his ineffectiveness claim. Mr. Earl's complaint of a "*Brady* violation" is further without merit. Resultingly, Mr. Earl's Rule 61 motion for postconviction relief is **DENIED**.

**SO ORDERED,**

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge

Original to Prothonotary

cc: Mr. Melvin L. Earl, Jr., *pro se*
     Diana A. Dunn, Deputy Attorney General
     Andrew R. Fletcher, Deputy Attorney General
     Erika B. LaCon, Esquire

---

determining that an evidentiary hearing was not necessary.").